Demetrios LARIOS, Plaintiff-Appellant,

v.

VICTORY CARRIERS, INC., and Alexander S. Onassis Corp., Defendants-Appellees,

and

Boyd, Weir & Sewell, Inc., and Cia, Salaminia De Naviera S.A., Defendants.

No. 266, Docket 27950.

United States Court of Appeals Second Circuit.

Argued March 12, 1963.

Decided April 17, 1963.

**64**

Murray A. Miller, Gordon & Miller, New York City, for plaintiff-appellant.

Kirlin, Campbell & Keating, New York City, Vernon S. Jones, New York City, of counsel, for defendants-appellees, Alexander S. Onassis Corp. and Victory Carriers, Inc.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

This action was filed on September 21, 1960, on the "law side" of the District Court for the Southern District of New York. The complaint asserted three causes of action. The first, seeking damages for personal injuries, and the third, seeking maintenance and cure, were laid against Cia, Salaminia de Naviera, S.A. and Boyd, Weir & Sewell, Inc., who were alleged to be in joint control of the SS. Ioannis, a vessel flying the Greek flag on which plaintiff Larios had been a seaman; the second, also seeking damages for personal injuries, was laid against Alexander S. Onassis Corp. and its general agent Victory Carriers, Inc., who were alleged to be in joint control of the SS. Stony Point. The Ioannis and the Stony Point had collided, off the coast of Europe, on June 18, 1957; the collision was claimed to have been due to the negligence of both vessels and to have injured the plaintiff. The complaint said nothing as to the latter's citizenship; the sole basis asserted for jurisdiction on the "law side" was a claim—highly dubious, we should suppose, in the light of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959)—that the first cause of action was sustainable under the Jones Act.

Although the summons was served on Boyd, Weir & Sewell, Inc. for itself and as agent for Cia, Salaminia, as well as on Victory Carriers, Inc. and Alexander S. Onassis Corp., the plaintiff seems to have taken no steps to prosecute the action against the two former defendants. The answer of Victory Carriers and Onassis Corp. stated that Victory Carriers was a Delaware and Onassis Corp. a Liberian corporation; in addition to various denials, it set up the affirmative defenses that plaintiff had executed a release and that the action was brought more than three years after the claim arose—three years being the period of limitation provided in § 49, subd. 6 of the New York Civil Practice Act for actions to recover damages for personal injuries due to negligence. After discussions between the attorneys as to the release, which plaintiff ultimately repudiated, defendants Victory Carriers and Onassis Corp. moved for summary judgment on the grounds of laches and the New York statute of limitations.

In addition to receiving affidavits, Judge Murphy held a hearing on factual issues relevant to determining whether Victory Carriers and Onassis Corp. had "one or more officers or other persons in the state on whom a summons for such corporation may be served," so as to render inapplicable the tolling provision of § 19 of the New York Civil Practice Act on which plaintiff relied. The judge found that these defendants had been amenable to service in New York throughout the three year period so that the statute had run, and, in an opinion proceeding solely on that ground, dismissed the complaint. From this dismissal plaintiff appeals.[1] Although we accept the district court's conclusion that the New York statute of limitations had run, we vacate the judgment of dismissal and remand for further consideration of the issue of laches.

Since Larios' claim against Victory Carriers and Onassis Corp. was for an injury on the high seas, the applicable principle with respect to the effect of his delay in bringing suit is laches and not the statute of limitations. This is so whether his suit against these defendants be treated as a libel in admiralty, The Key City, 14 Wall. (81 U.S.) 653, 20 L.Ed. 896 (1872); Gardner v. Panama Railroad Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951); Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533–534, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), or as an action on the "law side" of the federal court based on diverse citizenship under the saving clause, 28 U.S.C. § 1333(1), as we expressly held in Oroz v. American President Lines, Ltd., 259 F.2d 636 (2 Cir.1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959). Indeed, it would also be true if the suit against Victory Carriers and Onassis Corp. had been brought in a state court under the saving clause. For it is now clear that the maritime law controls all "substantive" issues in the disposition of maritime claims regardless of the form or forum of suit. See Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409–411, 74 S.Ct. 202, 98 L.Ed. 143 (1953); and see, as to the "substantive" character of rules relating to limitations, Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Judicial recognition of this principle wholly undermined the basis for the rigid application of state statutes of limitation to maritime claims that had been expressed in McGrath v. Panama Railroad Co., 298 F. 303 (5 Cir. 1924), which this Court followed in Marshall v. International Mercantile Marine Co., 39 F.2d 551, 552 (2 Cir.1930)— namely, the supposed "inconsistency of

---

1. Since the order and the ensuing judgment dismissed the entire complaint, even though the motion and opinion related only to the second cause of action, we are not faced with the problem of appellate jurisdiction that would otherwise arise from the absence of any determination and direction under F.R.Civ.Proc. 54 (b).

permitting a plaintiff, who may sue either in a common-law court or a court of admiralty, to maintain his action in the latter court after his right to sue in the former has been lost by delay."

■■ The Supreme Court has made it plain that although the analogous state statute of limitations is still relevant to the determination of laches in suits on maritime claims, "the matter should not be determined merely by a reference to and a mechanical application of the statute of limitations. The equities of the parties must be considered as well." Gardner v. Panama Railroad Co., supra, 342 U.S. at 31–32, 72 S.Ct. at 13, 14; accord, Czaplicki v. The Hoegh Silvercloud, supra, 351 U.S. at 533, 76 S.Ct. at 951. Recognizing this, defendants seek to sustain the dismissal on the ground that expiration of the state statute of limitations creates a "presumption of prejudice" which the plaintiff must "rebut" by showing, affirmatively, that his own delay was excusable and, negatively, that the defendant was not prejudiced thereby—a burden allegedly not met here. Language along these lines can indeed be found in this Court's two opinions in Redman v. United States, 176 F.2d 713, 715 (1949) and 185 F.2d 553 (1950), the first of which cited the McGrath and Marshall cases, supra. But both Redman opinions antedated the Supreme Court's Gardner decision; the first may have been influenced by what now appears the erroneous reasoning of McGrath and Marshall; and the second, although retreating in some degree by recognizing proof of excusable delay *or* lack of prejudice as sufficient, was naturally framed in the light of the first. Moreover, the Redman opinions do not stand alone in this circuit. LeGate v. The Panamolga, 221 F.2d 689, 691 (2 Cir. 1955), placed on the defendants the burden "to show inexcusable delay in filing the suit with resulting prejudice"—a solution that would bear too heavily against them as a general rule, however appropriate it was in the peculiar situation there presented where the plaintiff's suit was within the state period as to his unseaworthiness claim but beyond it as to his claim for negligence, see Gilmore & Black, Admiralty (1957), 633. Some language in Oroz v. American President Lines, Ltd., supra, harked back to Redman I, which it cited with approval, 259 F.2d at 639, but the decision took no such rigid approach, and the opinion also said that "in deciding whether maritime claims are barred by laches, courts of admiralty will use local limitation statutes as a rule-of-thumb * * *." This seems to put it right. When the suit has been brought after the expiration of the state limitation period, a court applying maritime law asks why the case should be allowed to proceed; when the suit, although perhaps long delayed, has nevertheless been brought within the state limitation period, the court asks why it should not be.

■ We think this approach, long taken by courts of equity in cases "where the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right," Russell v. Todd, 309 U.S. 280, 289, 60 S.Ct. 527, 84 L.Ed. 754 (1940); see Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946), is what the Supreme Court intended by its decisions in Gardner and Czaplicki. We cannot regard it as consistent with those decisions to hold that expiration of the analogous state statute creates a "presumption of prejudice", save in the sense that if the plaintiff proffers no pleading or presents no proof on the issue of laches, the defendant wins. Nor can we agree that when such a plaintiff has presented evidence excusing his own delay, he should nevertheless be automatically barred unless he also presents anticipatory evidence to negate prejudice on the part of the defendant, an issue as to which the defendant, with his greater knowledge, ought be required to come forward. Rather, when a plaintiff who asserts a maritime claim after the state statute has run, presents evidence tending to excuse his delay, the court must weigh the legitimacy of his excuse, the inference to be drawn from the expiration of the state statute, and

the length of the delay, along with evidence as to prejudice if the defendant comes forward with any. Moreover, although a plaintiff who has delayed bringing suit beyond the analogous state period has the ultimate burden of persuasion both as to the excuse for his own delay and as to lack of prejudice to the defendant, see Gilmore & Black, Admiralty (1957), 631, these two factors are not to be viewed independently. A weak excuse may suffice if there has been no prejudice; an exceedingly good one might still do even when there has been some. In stating this, we recognize that in Gardner the Supreme Court spoke in the conjunctive, 342 U.S. at 31, 72 S.Ct. at 13;

> "Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief."

But saying that a plaintiff who has fully cleared each of two hurdles will win is not the same as saying that a plaintiff must fully clear each of two hurdles to win. The foregoing analysis accords with that now applied in other circuits. See McDaniel v. Gulf & South American S.S. Co., 228 F.2d 189 (5 Cir. 1955), explaining and qualifying Morales v. Moore-McCormack Lines, Inc., 208 F.2d 218, 221 (5 Cir.1953); Claussen v. Mene Grande Oil Co., C.A., 275 F.2d 108 (3 Cir.1960), compare Kane v. Union of Soviet Socialist Republics, 189 F.2d 303 (3 Cir.1951), cert. denied, 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676 (1952); see Wilson v. Northwest Marine Iron Works, 212 F.2d 510 (9 Cir.1954).

Even on this approach there may be cases where the plaintiff's evidence as to excuse for the delay is so insubstantial that the court need not call on the defendant to come forward with evidence of prejudice. But this was not such a case. Larios' affidavit stated that, after a month's hospitalization in France following the collision, he had five months of out-patient treatment in West Germany, during which he received maintenance from the representatives of the owners of the Ioannis and at the end of which he was assured that his injuries and disability would disappear in time —a representation on which he also relies in part to avoid the release of January, 1958; that he was under the impression that he could sue the Stony Point only in the United States; that, after completion of his treatment in West Germany, he was assigned to the Ioannis until December, 1958, when he left the vessel in Texas, expecting a further assignment from Newark in January 1959; that he remained in the United States until June, 1959, then departing on a Greek ship which he left in West Germany; that he stayed there until September 12, 1960, when he entered the United States as a permanent resident; and that immediately thereafter he filed the complaint in this case—less than three months after the state limitation period expired. It is quite true that nothing in this history prevented Larios from filing suit when he was in the United States in the first half of 1959, at least if the error in the optimistic prognosis given late in 1957 or early in 1958 had then become apparent, or from thereafter instructing his lawyer in New York, whom he had retained to assist him with immigration problems, to do so. But the showing was enough so that it ought to have been weighed against evidence the defendants might proffer to show prejudice from the delay, through the loss or impairment of evidence as to the collision or as to the release or otherwise. We therefore vacate the judgment dismissing the complaint and remand for the taking of further proof on the issue of laches—by a hearing unless the parties agree otherwise—and for such further proceedings as the decision of that issue may indicate. McDaniel v. Gulf & South American S.S. Co., supra, 228 F.2d at 193; Claussen v. Mene Grande Oil Co., C.A., supra, 275 F.2d at 113.

Vacated and remanded.