Charles HILL, Appellant,

v.

W. BRUNS & CO., Appellee.

No. 786, Docket 73–1382.

United States Court of Appeals,
Second Circuit.

Argued April 3, 1974.

Decided June 5, 1974.

**566**

Lester E. Fetell, Brooklyn, N.Y. (William F. Cioffi, Brooklyn, N.Y., Sergi & Fetell, Brooklyn, N.Y., of counsel), for appellant.

William M. Kimball, New York City (Burlingham, Underwood & Lord, New York City, of counsel), for appellee.

Before HAYS and OAKES, Circuit Judges, and CHRISTENSEN, District Judge.*

OAKES, Circuit Judge:

Plaintiff-appellant's appeal is from the grant of a motion for summary judgment by Judge Neaher on the ground of laches. In granting the summary judgment, the judge treated the action as having been commenced, as technically it was, on March 20, 1972. In doing so, however, he did not take into account a previous action brought on this same cause against this same defendant-appellee on May 15, 1970. In that earlier action a motion to dismiss on the ground of laches was denied by Judge Zavatt; the action was voluntarily dismissed—without prejudice, however—on the basis of defendant-appellee's argument that service of process on an agent of appellee was of questionable validity. In dismissing the second action, it is our view that Judge Neaher should have taken into account the first, and accordingly we reverse.

Appellant, a longshoreman, was injured on January 5, 1967, aboard the M/S Brunsholm at Pier 13, East River, New York.[1] Appellant was employed by Standard Fruit & Steamship Co. (Standard) and the Brunsholm was owned and operated by W. Bruns & Co., the appellee. On the date of the alleged accident the vessel was under charter from Bruns to Standard. The defendant's answer of June 16, 1970, in the original action raised four affirmative defenses including lack of personal jurisdiction over the defendant, "insufficient" process, failure to state a ground for relief and time bar by statute of limitations, laches or both. In opposition to the motion, appellant urged that the unseaworthiness count was governed by a six-year statute of limitations, the action having been commenced some four months beyond the three-year negligence limitation. On April 19, 1971, Judge Zavatt denied the motion to dismiss on the authority of Larios v. Victory Carriers, Inc., 316 F.2d 63, 66–67 (2d Cir. 1963), on the basis that the "defendant has proffered no proof whatever as to his prejudice from the delay [of four months]." Appellee later took appellant's deposition on August 5, 1971, at which time appellant's claim of negligence and unseaworthiness was disclosed to relate to claimed defects in the Brunsholm's winches at Number 4 hatch and hatchboards in the Number 4 'tween deck. Immediately thereafter appellee moved for an order granting leave to file a third party summons and complaint upon appellant's employer, Standard, and to vacate the process alleging that service on Standard as agent of appellee was improper.

At some point following a request by all counsel for reassignment to another judge for trial, the case was transferred from Judge Zavatt to Judge Neaher for pretrial conference, which was held on January 18, 1971. When the case was ultimately called on for trial, it was, on

---

* Senior United States District Judge for the District of Utah, sitting by designation.

1. As a longshoreman, plaintiff-appellant was and is to be treated as a seaman under Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099 (1946). Under 33 U.S.C. § 902, as amended by 86 Stat. 1251 (1972), longshoremen are now limited to recovery under the Longshoremen's and Harbor Workers' Compensation Act.

appellant's motion, dismissed without prejudice; apparently it had come to the attention of appellant's counsel that Bruns did in fact have an agent other than Standard, Glaessel Shipping Corp., which had, on prior occasions, accepted service for it in New York.

Meanwhile, on March 20, 1972, appellant had filed a second complaint, that in the current action, and served appellee on March 28 by serving its agent, Glaessel Shipping Corp. Appellee again moved for summary judgment. In connection with its motion for dismissal of the first action, appellee had alleged, through the affidavit of Dr. C. G. Staelin, a partner of appellee, that "As confirmed by the absence of any such entry in the deck log book of M/S Brunsholm under date of January 5, 1967, no actual or claimed injury in the Port of New York on that date to longshoreman Charles Hill was ever brought to the attention of that vessel's Master, Chief Officer or deck officers (mates)." Dr. Staelin additionally alleged that neither the master, chief officer nor any of the deck officers (mates) serving aboard the M/S Brunsholm in January, 1967, were still serving aboard that vessel and that several of those persons were no longer employed by W. Bruns & Co. In connection with the second action, appellee submitted a supplementary affidavit of Dr. Staelin repeating all of the allegations of the first affidavit but going on to say that, following appellant's deposition in reference to the winches at Number 4 hatch and a hatchboard in the Number 4 'tween deck, "After thorough inquiry and search, we were compelled to inform Messrs. Burlingham [appellee's attorneys] that W. Bruns & Co. could not furnish the requested particulars because W. Bruns & Co. no longer has any 1967 record of any repairs or maintenance to those winches or any 1967 record of any repairs or replacements to those hatchboards." Nothing in either of these affidavits—the only material brought before Judge Neaher by appellee—indicates in any way that appellee *had* kept records in 1967 or at any other time (other than those entries that might have appeared in its deck log book) of any repairs or maintenance to the winches at Number 4 hatch or at any hatch, nor does anything appear in these affidavits or otherwise to indicate that there were any 1967 records or any other record of any repairs or replacements to hatchboards either at the Number 4 hatch or at any other hatch.

In dismissing appellant's second action as being barred by the lapse of time, Judge Neaher held that in the absence of statute the voluntary dismissal or discontinuance leaves the situation as if the suit had never been filed, Bunger v. United States Blindstitch Machine Corp., 8 F.R.D. 362 (S.D.N.Y.1948),[2] and considered that the laches question was presented in the context of a suit commenced more than two years after the applicable state statute of limitations had expired. "Thus," Judge Neaher held, the "plaintiff is required to persuade the court anew that adequate excuse exists for what is now a five-year delay and that no prejudice will result to the defendant." The court then went on to hold that no legally sufficient reason for delay appeared in the plaintiff's papers and that the defendant's papers am-

---

2. The "general" rule relied upon by the court below to negate the very existence of Judge Zavatt's prior decision of the laches question was stated by this court in A. B. Dick Co. v. Marr, 197 F.2d 498, 502 (2d Cir.), cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952), as follows: "voluntary dismissal of a suit leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought . . . ." We do not question the validity of this rule as a general proposition, but it is of little force in the present action where the district court, and this court in turn, must determine, as an equitable matter, whether there is any reason that appellant's suit should not be allowed to proceed. We need not decide whether the court below should have been bound by Judge Zavatt's prior decision on the laches question because we find appellee's affidavits submitted below to be insufficient to make out a case of laches in any event.

ply demonstrated the difficulties it would encounter in attempting to defend itself against such a stale claim.

■ In an admiralty suit state statutes of limitations are not strictly applied; instead, the doctrine of laches controls. Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); Larios v. Victory Carriers, Inc., 316 F.2d at 65. The courts are not to resort to mechanical application of local statutes of limitation in determining the issue of laches. See, e. g., Conty v. States Marine Lines, Inc., 355 F.2d 26, 28 & n. 3 (2nd Cir. 1966); Oroz v. American President Lines, 259 F.2d 636, 638 (2d Cir. 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed. 2d 572 (1959). No presumption attaches from the expiration of the applicable period of limitations. Larios v. Victory Carriers Inc., 316 F.2d at 66. Accordingly, the "peculiar equitable circumstances" of the case are determinative, Czaplicki v. The Hoegh Silvercloud, 351 U.S. at 533, and a court must examine the excuse for delay and prejudice to the defendant as a result of the delay. Gardner v. Panama Railway Co., 342 U. S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951).

■ Appellee failed to show prejudice within the applicable period, and it had the burden of adducing evidence on this issue. As we said in Larios v. Victory Carriers, Inc., 316 F.2d at 66, to establish the defense of laches there must be proof of "prejudice on the part of the defendant, an issue as to which the defendant, with his greater knowledge, ought be required to come forward." Certainly appellee possessed all the information relative to the possible disappearance (or nonexistence) of evidence. Yet the only claim made in its affidavits is that it might have had more evidence if it had received earlier notice. Nowhere does it allege, however, that it actually kept records which were lost as a result of the delay. To the contrary, the most that appellee says is that some of its employees on the M/S Brunsholm were no longer employed by it.

As Judge Zavatt had held, this was insufficient for appellee to meet its burden. Indeed where the appellee is the same, even though this is a subsequent action, it could be argued that, absent something new in the way of allegations of prejudice, Judge Zavatt's decision is controlling as, in effect, the law of the case.

■ On the point urged that this was a new case, plaintiff-appellant could readily have petitioned the court in the first action for leave to cause an additional or new summons to be issued and good service attempted upon Bruns by way of Glaessel Shipping as agent. See Grammenos v. Lemos, 457 F.2d 1067, 1071 (2d Cir. 1972). As this court there held, the "fact of invalidity of the one attempt at service does not automatically require dismissal of the complaint. . . . [T]he court has power, under Fed.R.Civ.P. 4(a), if the service is invalid or improper, to cause additional or new summons to be issued and good service attempted." Having chosen an alternative procedural route, that is to say, the filing of a new complaint and discontinuance of the old action, the appellant should not be placed in the procedural posture as if he had never brought any action in the first instance. See note 2 supra.

■ Laches is a doctrine aimed at avoiding the commencement of stale claims in equity where it is impossible or difficult for a defendant to defend because evidence has been destroyed or lost and the defendant thereby prejudiced as a result of the delay in the institution of the action. E. g., Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1940). Here, however, it would be a simple pleading technicality, totally inconsistent with the doctrines of equity and the spirit of the federal rules, if appellant were to have his right of action nullified by virtue of the fact that he discontinued his first action against this very same defendant and instituted a new one with proper service. We have come a long way since the days

of Baron Parke, who, it will be recalled, was proud of the fact that he had decided all cases on procedural grounds; much less do his doctrines apply in admiralty.

 When we come to the nub of the question of prejudice, the only additional evidence or claim presented by the appellee to Judge Neaher is in reference to maintenance and repair records as to winches and hatchboards, but, as we have said, it nowhere appears that these were destroyed after May of 1970. The docket entries, indeed, indicate that, never having filed written interrogatories, the appellee waited almost a year after the first action was brought to file a notice of taking of appellant's deposition. It could well be that whatever records were kept—if any—were destroyed after the first suit was brought. It could also well be that the practice of the trade is to keep maintenance and repair records of winches or hatches, if any are kept at all, for considerably longer than three years because surely a limitation period might well be longer than the New York statute now provides. In any event, the second affidavit we believe fails to make out a case of prejudice in the second action. It is the date of the filing of the first complaint which put the appellee on notice, not the date of the second complaint. Appellee had notice within 135 days of the expiration of the analogous three-year statute of limitations, and it cannot claim prejudice for having let evidence slip away after that date. Many, many states have saving statutes permitting new actions to be brought if an action fails other than on its merits, assuming the same cause is involved, notwithstanding any intervening expiration of a statute of limitations. *E. g.,* N.Y.C.P.L.R. § 205; 12 Vt.Stat.Ann. § 558. These statutes recognize the basic equitable doctrine which we adopt for purposes of admiralty law here, that the ultimate question is one of prejudice in fact, governed by the time of notification of the existence of the cause of action to the defendant and the plaintiff's prompt prosecution of same.

Here there is ample indication, as Judge Zavatt held in the first instance, that there was no prejudice to the appellee from the 135-day delay from the time the first action was instituted after the three-year statute had run. That is the only time legally relevant here.

Judgment reversed and case remanded.