Fortunato DE MONTE, Plaintiff,

v.

The SHIPPING CORP. OF INDIA, LTD.,
Defendant and Third-Party Plaintiff,

v.

WEEKS STEVEDORING CO., INC.,
Third-Party Defendant.

No. 78 Civ. 6201 (LFM).

United States District Court,
S. D. New York.

Sept. 18, 1979.

Lawrence M. Honig, New York City, for third-party defendant.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, by A. Peter Frank, New York City, for defendant.

Paul A. Gritz, Brooklyn, N. Y., for plaintiff.

## OPINION

MacMAHON, District Judge.

This is an action under general maritime law for damages resulting from personal

injury. Defendant moved for summary judgment under Rule 56, Fed.R.Civ.P., and the third-party defendant moves for dismissal of plaintiff's complaint. Since third-party defendant relies on matters outside the pleadings, we will treat its motion as one for summary judgment. The moving papers raise no issues as to any material fact. The case is thus appropriate for summary judgment.

Plaintiff longshoreman, an employee of Pittston Stevedoring Company ("Pittston"), was allegedly injured on August 18, 1975 while performing services aboard the "VISHVA KARUNA," a vessel owned by defendant Shipping Corporation of India ("Shipping") and moored at that time at Pier 10, Brooklyn.

Plaintiff subsequently sought compensation from Pittston and its insurer under the Longshoremen's and Harbor Workers' Compensation Act (the "Act"). 33 U.S.C. §§ 901–950 (1978). A settlement agreement was reached at a conference on July 30, 1977 attended by plaintiff, his representative, representatives of Pittston and its insurer, and a Department of Labor claims examiner. The precise terms of the agreement are unclear, but it is clear that on July 12, 1977 a final payment was made to plaintiff on compensation totalling $7,190.04.

Plaintiff commenced this action against Shipping on December 26, 1978 for damages for injuries allegedly sustained by him on August 18, 1975 as a result of Shipping's negligent failure to provide a safe workplace. Shipping in turn asserted a claim on May 23, 1979 against third-party defendant Weeks Stevedoring Company ("Weeks") alleging that any injury to plaintiff resulted from Weeks' negligent operation of an offshore crane to discharge the "VISHVA KARUNA" and consequently that Weeks was liable to Shipping for any sums adjudged owing from Shipping to plaintiff.

The defendants urge two grounds in support of their motions: first, that plaintiff is barred by the maritime doctrine of laches; second, that plaintiff lacks capacity to sue because this third-party claim has been as-signed to his employer, Pittston, by operation of Section 33(b) of the Act, 33 U.S.C. § 933(b) (1978).

### Laches

Since this action is brought under general maritime law, there is no statute of limitations directly governing the question of time bar. Nevertheless, the maritime doctrine of laches might bar this action.

In deciding a laches defense, we must consider three factors: (1) the limitations period established by the analogous statute of limitations; (2) the plaintiff's excuse for delay in suing; and (3) the prejudice to the defendant resulting from the delay. *Public Adm'r v. Angela Compania Naviera, S.A.*, 592 F.2d 58, 63–64 (2d Cir. 1979); *Hill v. W. Bruns & Co.*, 498 F.2d 565, 568 (2d Cir. 1974); *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 66 (2d Cir. 1963).

Defendants contend, and plaintiff does not dispute, that the proper analogous statute of limitations is New York Civil Practice Law and Rules § 214(5). 7B McKinney's Consolidated Laws of N.Y. § 214(5) (Supp.1978–1979). We agree. Section 214(5) governs land-based actions to recover damages for personal injury. Plaintiff's alleged injury occurred off a New York pier. Plaintiff is a resident of New York, Shipping has an agent for the transaction of business in New York, and Weeks is licensed to do business in New York. Thus, it makes sense to consider the New York limitations period.

The limitations period prescribed by Section 214(5) is three years. Plaintiff did not commence this action until December 26, 1978, more than three years and four months after the alleged injury on August 18, 1975. Plaintiff, therefore, would be barred under the analogous statute of limitations.

Respecting the second factor, plaintiff has the burden of coming forward with assertions and evidence of excuse for delay in bringing suit because the reasons for delay lie peculiarly within his knowledge.

*Public Adm'r v. Angela Compania Naviera, S.A., supra,* 592 F.2d at 64; *Larios v. Victory Carriers, Inc., supra,* 316 F.2d at 66. Plaintiff, however, does not even assert an excuse much less adduce proof of any reason for delay.

■ Turning to the final factor of prejudice caused by plaintiff's delay, the defendant has the burden of coming forward with the relevant facts because they are within its knowledge. *Public Adm'r v. Angela Compania Naviera, S.A., supra,* 592 F.2d at 64; *Larios v. Victory Carriers, Inc., supra,* 316 F.2d at 66, Shipping asserts two facts and Weeks just relies on the second.

Shipping first asserts that the delay has resulted in the unavailability of potential witnesses, namely, officers aboard the "VISHVA KARUNA" on the day of the alleged accident who are now scattered around the globe. Shipping, however, adduces no proof by way of affidavits or documents to support this contention.

Shipping's second assertion, joined by Weeks, is that plaintiff's delay has resulted in the loss of evidence necessary to the defense, namely, a Pittston file relating to its work aboard the "VISHVA KARUNA" on the day of the alleged accident. Shipping supported this assertion by an affidavit, a deposition subpoena, and a letter from Pittston to Shipping's counsel tending to show that on April 24, 1979 Shipping sought to discover the file and that the file had apparently been misplaced and could not be located. Shipping argues that it was unable to subpoena the file until plaintiff filed suit, and that the file would have been available but for plaintiff's delay.

The foregoing represents the whole of the parties' arguments and evidence on the three factors the court must consider. Though the law in this circuit is clear that these are the three factors to consider, the law is less clear on precisely how to analyze and weigh the contentions and proofs.

■ The cases teach that the running of the analogous statute of limitations creates no presumption against the plaintiff. Instead, we must use the statutory period only as a rule of thumb while considering the factors of excuse and prejudice. The running of the statute, however, does have this effect: whereas before the running of the statute the defendant has the burden of persuading the court why the action should not proceed, the running of the statute shifts to the plaintiff the burden of persuading the court why the action *should* proceed. *See, e. g., Larios v. Victory Carriers, Inc., supra,* 316 F.2d at 66.

■ Where, as here, the statute has run and in addition the plaintiff has offered no excuse for delay, the cases are unclear on what ensues. In *Larios v. Victory Carriers, Inc., supra,* 316 F.2d at 66, the majority held that in such a case the action is barred even though there is no evidence of prejudice. The plaintiff in such a case is held to be unable to persuade the court that the action should proceed.

The two subsequent Court of Appeals cases regard *Larios* as the leading case on laches, and both cite it with approval. See *Public Adm'r v. Angela Compania Naviera, S.A., supra,* 592 F.2d at 64; *Hill v. W. Bruns & Co., supra,* 498 F.2d at 568. *Larios* teaches that defendants here win without even a consideration of their evidence of prejudice. But at least one of the subsequent cases, though relying on *Larios,* appears to have announced a slightly different rule. In *Hill,* the majority reversed a dismissal based on laches on the ground that the defendant had not come forward with sufficient evidence of prejudice. *Hill v. W. Bruns & Co., supra,* 498 F.2d at 568–69. The *Larios* court had held that the defendant need only come forward if the plaintiff produces evidence of excuse, and it is unclear whether the plaintiff in *Hill* produced such evidence. Thus, *Hill* appears to require at least some showing of prejudice even if there is no evidence of excuse.

Indeed, there is some suggestion in *Hill* that excuse may be irrelevant to a discussion of laches. The *Hill* court reasoned that the function of the doctrine of laches is to prevent lawsuits based on stale or unavailable evidence and, thus, that the key question is prejudice. *Hill, supra,* 498 F.2d at

568. In so reasoning, the court gave little or no weight to the factor of excuse, which presumably serves the functions of repose and fairness by cutting off claims where, even though the defendant may have suffered little or no prejudice, the plaintiff's dalliance has been such that allowing the suit would be inequitable.

We think *Hill* gives unduly short shrift to the factor of excuse. Our view is strengthened by the decision this year in *Public Adm'r v. Angela Compania Naviera, S.A., supra,* 592 F.2d at 63–64, where the Court of Appeals, though giving no further guidance on whether we are required in cases such as this to consider defendants' evidence of prejudice, reaffirmed that it still regards *Larios* as the law and that excuse must be weighed no less than prejudice. *See* G. Gilmore & C. Black, The Law of Admiralty 771–76 (2d ed. 1974).

In sum, under *Larios* this action would be barred automatically; under *Hill* we must focus on prejudice; under *Public Adm'r* both factors must be considered in general, but it is unclear whether the *Larios* rule still operates to bar the action where the statute has run and the plaintiff has offered no excuse for delay. Faced with this uncertainty, we have considered defendants' evidence and find that, though weak, it is sufficient in light of all the circumstances to bar the plaintiff in this case.

There is no evidence supporting Shipping's claim of unavailability of witnesses.

There is credible evidence that probative documents are unavailable. Admittedly, defendants have not shown when the documents became misplaced. It is conceivable that they were lost well before the running of the analogous statute. On the other hand, it is equally possible that they only disappeared recently and would have been available but for plaintiff's delay.[1] In any event, probative evidence is clearly missing, even though the precise timing and cause of its disappearance remain unclear.

Though defendants' evidence of prejudice is not overwhelming, we find that they have met their burden of coming forward, which is the most they are required to do under *Larios* or *Public Adm'r*. The plaintiff has the burden of persuading this court that under all the circumstances the case should proceed. Yet, plaintiff did not file this action within the analogous limitations period. Against defendants' credible evidence of prejudice, plaintiff offers no evidence of excuse and only a conclusory assertion that there has been no prejudice. Plaintiff has failed to persuade us that this action should proceed, and accordingly we hold he is barred by the doctrine of laches. *See A. Bottacchi, S.A. v. Philipp Bros. Latin America Corp.,* 410 F.Supp. 375 (S.D.N.Y. 1976).

### *Plaintiff's Capacity to Sue*

The applicable statute, Section 33(b) of the Act, provides that acceptance of compensation pursuant to the Act "under an award in a compensation order filed by the deputy commissioner or [Benefits Review] Board" shall operate as an assignment to the employer of any rights of the claimant against third persons unless the claimant commences an action against such third persons within six months after the award. 33 U.S.C. § 933(b) (1978).[2]

Plaintiff received his final compensation payment on July 12, 1977 after having pursued his compensation claim under the Act. He did not commence this action until De-

---

1. We note that Weeks' argument for prejudice is stronger in this case than Shipping's. The Pittston file was reported to be misplaced on May 18, 1979, over five months after Shipping was served with plaintiff's complaint but five days before Weeks was impleaded. Thus, while Shipping might have been able to discover the document after becoming a party, Weeks had no such opportunity.

2. The section reads:
   "Acceptance of . . . compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against [a] third person unless such person shall commence an action against such third person within six months after such award." 33 U.S.C. § 933(b) (1978).

cember 26, 1978, clearly more than six months later. Shipping and Weeks, as third persons, contend that Section 33(b) has thus operated to assign plaintiff's claims against them to Pittston, his employer, and that plaintiff therefore lacks capacity to sue. Although the matter is by no means free from doubt, we disagree because the evidence does not warrant a finding that the compensation paid to plaintiff came "under an award in a compensation order filed by the deputy commissioner or [Benefits Review] Board."

Defendants' evidence and the facts inferable from it can be briefly summarized. A settlement agreement was reached among Pittston, its insurer and plaintiff at a meeting of June 30, 1977 before a Department of Labor claims examiner. This meeting was memorialized in the department's Form LS–280, a Memorandum of Information signed by the claims examiner on July 8, 1977. Frank affidavit, Ex. A.

On July 12, 1977, plaintiff accepted final payment under the agreement. This fact is memorialized in Pittston's insurer's copy of the Bureau of Employees' Compensation Form BEC–208(F), entitled "Compensation Payment Stopped or Suspended." Frank affidavit, Ex. A. According to a typed explanation filled in the form, payments were stopped "As Per U.S. Dept of Labor recommendation 6/30/77 'Claim Closed'." The form states that the insurer is to send various copies to the deputy commissioner, who is then to forward certain copies to claimant. There is no evidence as to whether the insurer actually forwarded the copies to the deputy commissioner, whether the latter received any, whether he sent any copies to plaintiff and whether plaintiff received any.

Defendants do not assert that any action was taken by the Board. They admit that the deputy commissioner took no formal action, and they do not contend that he personally took any informal action.

In 1945, our Court of Appeals held that before an "award" exists under Section 33(b), there must be "some official action by the Deputy Commissioner." *Grasso v. Lorentzen*, 149 F.2d 127, 128 (2d Cir. 1945). The action can be informal, such as a simple notation by the deputy commissioner in his records showing the disposition he has made of the plaintiff's claims. *Id.; Toomey v. Waterman S.S. Corp.*, 123 F.2d 718, 721 (2d Cir. 1941). But there must be some action. In the absence of such action, the mere acceptance of payments pursuant to a settlement agreement is insufficient to constitute an award. *Grasso v. Lorentzen, supra,* 149 F.2d at 128–29. Under the *Grasso* rule, there has been no award in this case and hence no assignment.

This authority, though hoary, remains sound in light of the purpose of Section 33(b). As the court observed in *Grasso,* prior to 1938 Section 33(b) provided that acceptance of compensation without more did operate as an assignment. *Id.* As then written, the law did not fully protect its intended beneficiaries, the longshoremen who might accept less than a just settlement from their employers and unwittingly forfeit the right to proceed against third persons. The 1938 amendment, by requiring the official imprimatur of the Board or the deputy commissioner, sought to remedy both of these defects. The amendment, which is at issue here, both reduced the likelihood of a substantively unfair settlement and increased the chance that a plaintiff would be made fully aware of the procedural consequence of any duly approved settlement—assignment to his employer of his rights against third parties unless suit against them was brought within six months. The requirement of official action by the deputy commissioner or Board is thus more than an empty formality.

Defendants' assertion of an assignment, therefore, must fail because there has been no official action by the deputy commissioner or Board.[3] Defendants con-

---

3. Defendants call our attention to a recent Fourth Circuit opinion finding that an award had been made. *See Liberty Mut. Ins. Co. v.* *Ameta & Co.,* 564 F.2d 1097 (4th Cir. 1977). That case provides no help to defendants because it explicitly adopted the *Grasso* rule. *Id.*

tend, however, that this result is precluded by a recently promulgated federal regulation and two recent cases.

Defendants urge that under 20 C.F.R. § 702.312, promulgated in 1977, the deputy commissioner may delegate some of his duties in connection with claims processing. They contend that there has been a delegation here to the claims examiner and that his filing of the Memorandum of Information memorializing the settlement agreement constitutes an award by the deputy commissioner.

The regulation provides:

"Informal conferences shall be called by the deputy commissioner or his designee assigned or reassigned the case and held before that same person, unless such person is absent or unavailable. When so assigned, the designee shall perform the duties set forth below assigned to the deputy commissioner, *except that a compensation order following an agreement shall be issued only by a person so designated by the Director to perform such duty.*" 20 C.F.R. § 702.312 (1978) (emphasis supplied).

The regulation clearly enlarges the statutory language by allowing the deputy commissioner to delegate the authority to issue a compensation order. Assuming the validity of this enlargement, the regulation still requires both a "designation" and an "order." *Perez v. Costa Armatori, S.P.A.,* 465 F.Supp. 1211, 1213 (S.D.N.Y.1979). Following *Perez,* we hold that those relying on the regulation have the burden of proving those two elements.

Defendants have proved neither element. There is nothing in the evidence suggesting a designation other than the existence of the power to designate. Moreover, even assuming a designation, the claims examin-

er's Memorandum of Information does not, in our opinion, amount to an "order." The section of the memorandum memorializing the settlement agreement is entitled "Recommendation," not "Order." Nothing on the memorandum form suggests that the recommendation has binding force backed by legal sanction. To the contrary, the memorandum form itself appears to permit "controversion" of the recommendation, for the section entitled "Action by Employer/Carrier" provides for the latter's submission of certain forms in the event of such controversion. Frank affidavit, Ex. A.

The two cases relied upon by defendants are virtually identical and will be treated as one. *See Hernandez v. Costa Armatori, S.P.A.,* 467 F.Supp. 1064 (E.D.N.Y.1979); *Rodriguez v. Compass Shipping Co.,* 456 F.Supp. 1014 (S.D.N.Y.1978). In *Rodriguez,* this court ruled that since the regulation allows designation, there is no reason to suppose that a claims examiner is not acting for the deputy commissioner when he presides over a settlement conference and orders compensation. *Rodriguez v. Compass Shipping Co., supra,* 456 F.Supp. at 1019–20. Under this rule, defendants would not have to prove designation.

In so ruling, the court acknowledged that it was departing from *Grasso's* requirement of action by the deputy commissioner but reasoned that such departure was warranted by the regulation and required by the purpose of the award requirement and the realities of administrative agency process. *Id.* We decline to follow *Rodriguez* and agree instead with *Perez* because, in our view, (1) the regulation does not dispense with the requirement of proof of the designation; (2) *Grasso,* though antedating the regulation, remains the law in this circuit; and (3) it would require unnecessary and

---

at 1102. The court found an "official action" in the deputy commissioner's reception, filing and acceptance of four documents concerning a settlement agreement, including a Form BEC–208 such as exists here, as well as three others not present here.

We offer no opinion on whether such evidence would satisfy the *Grasso* rule in this circuit. This court has before noted its disa-

greement with the Fourth Circuit's result in *Liberty Mut. See Rodriguez v. Compass Shipping Co.,* 456 F.Supp. 1014, 1020 n.5 (S.D.N.Y. 1978). For our part, we note that the evidence that persuaded the *Liberty Mut.* court is not present here, for there has been no proof that the deputy commissioner received, filed or accepted either of the documents offered by defendants.

potentially inaccurate speculation judicially to notice the delegations of authority that might occur within one of our many federal agencies.

Even if the *Rodriguez* rule were applied here, defendants would fail to satisfy it, for even though a delegation may be assumed to exist, the proof of an "order" is not nearly as compelling here as in *Rodriguez.* There, the claimant and his employer signed a form that embodied the settlement terms and explicitly anticipated the issuance of a compensation order. Thus, the court ruled, the purposes of the award requirement were met because the plaintiff had an opportunity to consider the consequences of accepting compensation. *Id.* at 1018–20.

Here, however, neither of the documents in evidence contains plaintiff's signature. Moreover, neither refers to the anticipated issuance of a compensation order. Thus, there is little assurance that plaintiff, assuming he knew the law, understood that an assignment would flow unless he sued third persons within six months.

Accordingly, we hold that there has been no assignment. In view of this holding, there is no need to consider plaintiff's contention that any assignment that exists is invalid because of a conflict of interest between Pittston and plaintiff.

#### Conclusion

There is no issue of fact as to when the alleged injury occurred, when this action was commenced, whether plaintiff has offered an excuse for delay and whether there is some prejudice to defendants. Defendant and third-party defendant are therefore entitled to summary judgment dismissing the action on the ground of laches as a matter of law.

Accordingly, defendant's and third-party defendant's motions for summary judgment are granted, and the Clerk is directed to enter judgment dismissing the action with prejudice.

So ordered.