**Gordon SANDVIK, Plaintiff-Appellant,**

**v.**

**ALASKA PACKERS ASSOCIATION, a corporation, Defendant-Appellee.**

**No. 77–3275.**

United States Court of Appeals, Ninth Circuit.

Dec. 17, 1979.

Thor P. Ulvestad, Jackson, Ulvestad, Goodwin & Grutz, Seattle, Wash., for plaintiff-appellant.

David Jurca, Seattle, Wash., argued for defendant-appellee; John E. Ederer, Seattle, Wash., on brief.

Before COWEN *, Court of Claims Judge, TRASK and HUG, Circuit Judges.

HUG, Circuit Judge:

This action, instituted by the plaintiff-appellant, Gordon Sandvik, to recover amounts alleged to be due on a bare boat charter, arises under the admiralty jurisdiction of the federal courts, 28 U.S.C.

---

* Honorable Wilson Cowen, Senior Judge, United States Court of Claims, sitting by designation.

1. Gordon Sandvik apparently owned the VICTOR and operated Sandvik Charters, Inc. as a sole proprietorship. Sandvik Charters, Inc.

---

§ 1333(1). The district court granted a summary judgment in favor of the defendant-appellee, Alaska Packers Association (APA), on the ground that the suit was barred by laches.

We find that genuine issues of fact exist pertinent to the defense of laches and, therefore, reverse and remand to the district court for further proceedings.

FACTS

Gordon Sandvik acquired the vessel VICTOR in 1966. On October 31, 1967, Sandvik Charters, Inc.[1] and APA entered into a bare boat charter. This agreement provided for the charter of the VICTOR to APA for the period of June 1 through August 14, for the years 1968, 1969, 1970 and 1971. APA had an option to extend the charter for the same period during 1972 and 1973; it could exercise this option by giving notice no later than August 15, 1971. Sandvik was to deliver the VICTOR to APA's shipyard in Blaine, Washington each year.

The charter price was $30,000 for each year. This amount was to be paid in three installments: $10,000 upon delivery, $10,000 on July 10, following delivery, and $10,000 upon redelivery to Sandvik, which was also to take place at APA's shipyard. On April 21, 1969, the charter was amended to lower the annual charter price to $26,250, payable in the same manner as the original agreement, in installments of $8,750 each.

At the end of each charter year APA submitted a settlement statement to Sandvik. This statement showed expenses incurred by APA in repairing the VICTOR which APA asserted were Sandvik's responsibility under the agreement. APA deducted these expenses from the amount due Sandvik at the end of each year, and then remitted the balance to him. Sandvik communicated his disagreement with many of these deductions to APA officials. Between the 1970 and 1971 charter years

ceased to exist as a corporation as of July 1, 1973, for failure to pay license fees to the State of Washington, pursuant to Wash.Rev.Code § 23A.40.075. See discussion infra.

Sandvik met with several APA officials, in an attempt to settle the differences. Sandvik was again unhappy after the 1971 charter year, and another meeting with APA officials was held. APA was represented at these meetings by Don Cooper as the principal APA official and also by Herb Cooley and Jim Caldwell.

Sandvik filed the present action on August 22, 1974 in the United States District Court for the Western District of Washington. The majority of his claims were to recover amounts that he alleges were wrongfully withheld by APA from the installments due. Also presented were claims for damage to the boat caused by negligent operation of the boat by APA during the 1970 and 1971 charter years. Sandvik further claimed damages for late redelivery of the boat after the 1971 charter season, while repairs were being performed at APA's shipyard.

APA filed a motion for summary judgment on several grounds, including laches and standing to sue. In support of the motion APA attached the affidavit of its attorney David J. Jurca. The affidavit may be summarized as follows: Three of APA's witnesses had died, being Don Cooper, former vice-president and general manager of APA, who was the principal negotiator with Sandvik, Herb Cooley, former supervisor of the Blaine shipyard, where most of the repairs were performed, and Frederick Leonard, the captain of the VICTOR during the 1971 charter season; Leonard Verholft, the captain of the VICTOR during the 1970 charter season and Leonard Cole, the engineer of the VICTOR in 1971, could not be located by Jurca or APA, despite their best efforts; James Caldwell and Lloyd Eisner, the APA officials who were the most knowledgeable about Sandvik's account, no longer worked for APA, Caldwell being presently employed in Bellingham, Washington, and Eisner in San Francisco, California. Two other APA officials involved with the repairs to the VICTOR had retired. Jurca had talked with a number of witnesses who could not remember the repairs to the VICTOR, and a number of the records of APA pertaining to the events in question had been inadvertently lost, destroyed, or misplaced.

On May 24, 1977, the district judge granted APA's motion for summary judgment. He found that APA had been prejudiced by the delay of Sandvik in commencing the action, that Sandvik had presented no valid excuse for the delay, and thus the doctrine of laches should apply to bar the action.

## DISCUSSION

▉ The defense of laches in an admiralty case depends upon the equitable circumstances of each case. Where there has been a lapse of some time in bringing the suit, the question is whether it would be inequitable to enforce the claim because of the delay. *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). The Court stated:

> "Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." *Gardner v. Panama R. Co.*, 342 U.S. 29, 31 [72 S.Ct. 12, 13, 96 L.Ed. 31]. This does not mean, of course, that the state statutes of limitations are immaterial in determining whether laches is a bar, but it does mean that they are not conclusive, and that the determination should not be made without first considering all the circumstances bearing on the issue.

*Id.* at 533, 76 S.Ct. at 951.

▉ In applying the doctrine of laches, weight is generally given to the statute of limitations that would apply to a comparable non-admiralty action filed in state court in the state in which the cause of action arose. *Espino v. Ocean Cargo Line Ltd.*, 382 F.2d 67 (9th Cir. 1967). The comparable state statute of limitations is a guideline, but the actual determination should be made after evaluating the prejudice to the defendant and the reasons for the delay. Judge Friendly, in *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 66 (2nd Cir. 1963) spoke of the local statute of limitations as a rule of thumb, stating:

When the suit has been brought after the expiration of the state limitation period, a court applying maritime law asks why the case should be allowed to proceed; when the suit, although perhaps long delayed, has nevertheless been brought within the state limitation period, the court asks why it should not be.

*Id.* at 66.

■ We therefore commence our analysis with a determination of the applicable state statute of limitations for which we look to the State of Washington.[2]

The majority of Sandvik's claims are to recover funds he contends are due to him under the charter contract, and were wrongfully deducted and withheld by APA. There are specific clauses in the written charter stating which party is responsible for various repairs. Interpretation of the written agreement is thus necessary for the determination of these claims. Interpretation of the written agreement is likewise required in considering Sandvik's claims for negligence, because other clauses of the contract allocated responsibility for negligently incurred damages.

■ Having determined that Sandvik's claims are founded upon the written charter contract, we find the analogous state statute of limitations to be the six-year statute for actions "upon a contract in writing, or liability express or implied arising out of a written agreement." Wash.Rev. Code § 4.16.040.[3] We reject the contention

of APA that a three-year statute of limitations is applicable, Wash.Rev.Code § 4.16.-080.[4] APA asserts that the agreements under which APA performed the repairs on the VICTOR and then deducted these amounts were made orally between APA officials and Sandvik. APA argues that the other claims of Sandvik are negligence claims. While these are matters that may be properly raised in defense, they do not change the nature of Sandvik's action. The action is clearly upon the written charter or liability express or implied arising out of the written charter, which is governed by the six-year statute of limitations.[5]

The present suit was instituted on August 22, 1974, a little over three years after the August 14, 1971 expiration date of the charter. The trial judge did not make a finding as to the analogous state statute of limitations. It is apparent that this action was brought well within the comparable six-year statute of limitations. Thus, the fact that the action was brought within the period of the comparable statute of limitations weighs in favor of the appellant.

■ Prejudice to the other party is the essential element of laches. *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 215, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); *Espino v. Ocean Cargo Line Ltd.*, 382 F.2d at 70.

■ In finding that APA was prejudiced by the delay in filing suit, the trial judge

---

2. The applicable state statutes are those of the State of Washington, where the cause of action arose. The contract was executed in Washington, and was performed in Washington. Sandvik is a Washington resident, Sandvik Charters, Inc., was incorporated in Washington, and APA is licensed to do business in Washington.

3. Wash.Rev.Code § 4.16.040 provides in pertinent part:

   Actions limited to six years.
   Within six years:

   .    .    .    .    .

   (2) An action upon a contract in writing, or liability express or implied arising out of a written agreement.

4. Wash.Rev.Code § 4.16.080 provides in pertinent part:

Actions limited to three years.
Within three years:

.    .    .    .    .

(2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated;

(3) An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument;

.    .    .    .    .

5. The statute of limitations on amounts due under a contract for continuous service, does not begin to run until the contract is terminated. *Heasley v. Riblet Tramway Co.*, 68 Wash.2d 927, 416 P.2d 331, 337 (1966).

stated, "Defendant is particularly prejudiced by the loss through death of key witnesses." However, the affidavit in support of the motion for summary judgment did not state the dates of the deaths of these witnesses. Without knowing the dates of death, it is impossible to determine whether any prejudice was caused by the delay. Where death occurs before any unreasonable delay, the death should not be used as a basis for the application of the doctrine of laches. *See Aronovitch v. Levy,* 238 Minn. 237, 56 N.W.2d 570, 575 (1953); *Nelson v. Dodge,* 76 R.I. 1, 68 A.2d 51, 58 (1949). Thus, if the deaths were to have occurred a few months after termination of the contract the appellee could hardly argue that it was prejudiced by the delay.

On the other hand if the deaths occurred after the suit was filed, but before the trial, the failure of the defendant to preserve the testimony by deposition in anticipation of trial should be considered. *See Nelson v. Dodge,* 68 A.2d at 58. We note in this case that the APA has demonstrated ample willingness to depose Sandvik, the opposing party. At oral argument, counsel for APA proffered the death certificates, for our judicial notice. We decline to take judicial notice of the certificates, for the reason that the trial judge should first evaluate this evidence.

The availability or unavailability of the other witnesses who are not dead was not established by the affidavits of appellee. Further inquiry would be required to fairly make this determination. The mere fact that they are no longer with the company or in the immediate area is not sufficient. There has been no showing that their attendance could not be obtained either at trial or at depositions.

The affidavit of APA's attorney states that many records have been inadvertently lost or misplaced due to the delay. The assertion of inadvertence seems conclusory, however. A more definite showing of how and when the records were lost may be

required where only one-half the statutory limitations period has run. The libellant should not suffer because his adversaries have not preserved defense material. *Brattoli v. Kheel,* 302 F.Supp. 745, 750 (E.D.N.Y. 1969).

■ Even the presence of prejudice does not necessarily require dismissal. It may be outweighed by the strength of the excuse for the delay. *Espino v. Ocean Cargo Line Ltd.,* 382 F.2d at 69; *Larios v. Victory Carriers, Inc.,* 316 F.2d at 67. The appellant contends that the negotiations lasted until a few months before this action was instituted. This is a disputed question of fact, the ascertainment of which would be important to determine whether the delay which was still well within the statute of limitations period was justified or excusable.

■ The appellant also points out that appellees proceeded with extensive discovery, including depositions, before the question of laches was ever raised. This should be evaluated, particularly in light of the fact that the comparable statute of limitations had almost three years to run. There are substantial questions of fact to be resolved in applying the doctrine of laches in this case.

APA argues that summary judgment was proper in any event since the charter was between Sandvik Charters, Inc. and APA, and thus Gordon Sandvik as an individual does not have standing to sue. Although this issue was before the trial judge, he did not address it, disposing of the matter solely on the basis of laches. Since there appear to be genuine issues of fact with respect to this issue, we decline to rule on the merits, leaving the matter for further findings on remand, if necessary.

APA contends that Sandvik Charters, Inc. could not maintain the action since they had not paid license fees to the State of Washington. Wash.Rev.Code § 23A.44.-120.[6] *See Reese Sales Co. v. Gier,* 16 Wash.

---

**6.** Wash.Rev.Code § 23A.44.120 provides:
23A.44.120 Compliance with fee requirements prerequisite to court proceedings. No

corporation shall be permitted to commence or maintain any suit, action, or proceeding in any court of this state, without alleging and

App. 664, 557 P.2d 1326 (1977). The *Gier* case leaves open at least two exceptions whereby Sandvik could maintain suit. This is a matter for the trial court to determine upon hearing the pertinent evidence.

There is also a dispute as to exactly how the charter was executed, whether by Sandvik Charters, Inc. or by Sandvik as an individual.[7] It also appears that APA might be estopped from asserting this issue depending upon how it dealt with Sandvik, an issue raised in Sandvik's affidavit. This issue involves questions of fact which must first be considered by the trial judge.

### CONCLUSION

A trial judge's grant of summary judgment is "proper only where there is no genuine issue of any material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Smith v. Gross*, 604 F.2d 639, 641 (9th Cir. 1979), quoting *Great Western Bank & Trust v. Kotz*, 523 F.2d 1252, 1254 (9th Cir. 1976). We have further noted that where laches is raised as a defense "the factual issues involved . . . can rarely be resolved without some preliminary evidentiary inquiry." *Espino v. Ocean Cargo Line Ltd.*, 382 F.2d at 70.

On the record before us it appears doubtful that laches can be invoked to bar the appellant's suit since only about three years of the comparable six year statute of limitations had run. At the very least, substantial issues of fact remain to be determined on this issue and the summary judgment was thus improperly granted.

Reversed and Remanded.

---

proving that it has paid or contracted to pay as herein provided all fees and penalties due the state of Washington under existing law or this title.

7. The facts are not clear as to the form of ownership of the VICTOR, whether it is by Sandvik individually, or by Sandvik Charters, Inc. *This should also be ascertained on remand.*