**Bora DO, Plaintiff–Appellant,**

v.

**OCEAN PEACE INC, in personam; Ocean Peace F/T, official no. 677399, her engine, machinery, appurtenances and cargo, in rem, Defendants–Appellees.**

**Tinh Pham, Plaintiff–Appellant,**

v.

**Ocean Peace Inc, in personam; United States Seafoods LP, in personam; Seafreeze Alaska F/T, official no. 517242, her engines, machinery, apurtenances, and cargo, in rem, Defendants–Appellees.**

**Nos. 01–35177, 01–35179.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2001

Filed Jan. 29, 2002.

John W. Merriam (argued), Seattle, WA, for plaintiffs-appellants Bora Do and Tinh Pham.

Dennis M. Moran (argued), Legros Buchanan & Paul, Seattle, WA, for defendant-appellee Ocean Peace, Inc.

George H. Luhrs, Seattle, WA, for amicus curiae Joe Harper and the class of similarly situated persons.

Before: O'SCANNLAIN, GRABER, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge.

Bora Do and Tinh Pham seek wages owed them by Ocean Peace, Inc. ("Ocean Peace"), for work performed aboard its fishing trawlers. The district court granted summary judgment in favor of Ocean Peace on Do's and Pham's claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, because of an exemption for employment relating to the "first processing" of marine products in conjunction with fishing operations. The district court also granted summary judgment to Ocean Peace on Do's and Pham's remaining wage claims because of their failure to file suit within the six-month limitations periods specified by their contracts and 46 U.S.C. § 10602. The questions before us now are whether Do and Pham are exempt employees under FLSA's "first processing" provision and whether the six-month limitations periods are applicable. We hold that the "first processing" exemption does apply, but that the six-month limitations periods do not.

## BACKGROUND

In June 1999 Bora Do ("Do"), her husband Hoang Do,[1] and their friend Tinh Pham left their homes in Virginia to seek work in the Alaskan fishing trade. They applied for jobs as fish processors with Ocean Peace at its Seattle office. Do and Pham signed identical contracts to work as fish processors on the factory trawler F/T Ocean Peace.

Each contract provided for compensation in proportion to the income generated by the particular fishing expedition. The contract was for forty days; Do and Pham were to receive a bonus if they worked the entire forty-day term. They agreed to pay their own transportation costs to and from the vessel in Alaska. The contract also required that employees bring any legal claims "in connection with performance of the contract" within six months of the contract's termination. Each contract bears the signature of the employee and someone who is identified as a member of Ocean Peace's personnel department; Ocean Peace is denominated as the "employer."

Ocean Peace flew Do and Pham to Dutch Harbor. Once there, Do was offered and elected to take a housekeeper's position on the F/T Ocean Peace in lieu of a fish processor's position. She conceded in the district court that she should be "treated as a processor because she was initially hired as a processor and her housekeeping duties were such that without them the processing operation could not go on." Despite the fact that his contract designated the F/T Ocean Peace, Pham was assigned to work as a fish processor on the F/T Seafreeze.

Both the Ocean Peace and Seafreeze fished for rockfish in the U.S. economic zone in the Bering Sea. The rockfish processing that occurred on the trawlers included the following operations: 1) initial cleaning and rinsing, 2) heading and gutting, 3) grading and sorting, 4) placing in trays and freezing, and 5) packaging and storing in the vessel's freezer holds. Each trawler processed its own catch.

Neither Do nor Pham worked for a full forty-day term. Both became ill and remained on the trawlers for approximately thirty days. At the end of July, Do, her husband, and Pham all stopped working for Ocean Peace. All three were dropped off in Dutch Harbor, Alaska, and they flew back to Virginia. Do and Pham later received settlement statements from Ocean Peace in the form of a bill that included disputed airfare.

Do and Pham filed separate suits in federal district court. Each brought in personam claims against Ocean Peace and in rem claims against the vessels on which they worked. The district court dismissed Do's and Pham's claims under FLSA and dismissed their additional wage claims based on six-month limitations periods contained in the contracts and 46 U.S.C. § 10602. The district court entered judgment in Do's favor in a small amount for the cost of cure. Pursuant to a stipulation, Pham's remaining claims were dismissed with prejudice. The two cases were consolidated on appeal.

## DISCUSSION

■ There are two issues on appeal: first, whether FLSA's "first processing" exemption relieves Ocean Peace from federal minimum wage and hour requirements and second, whether the statutory

---

**1.** Hoang Do currently has a case pending in Washington state court. Thus, the facts of his case are not at issue in this appeal.

and contractual six-month limitations periods bar Do's and Pham's in personam and in rem claims. We review de novo both of these legal issues. *See Barner v. City of Novato,* 17 F.3d 1256, 1258 (9th Cir.1994).

## I. FLSA "First Processing" Exemption

■ FLSA exempts numerous employment arrangements from its minimum wage and overtime requirements. The FLSA provision at issue in this appeal exempts

> any employee employed in the catching, taking, propagating, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life, or in the first processing, canning or packing such marine products at sea as an incident to, or in conjunction with, such fishing operations, including the going to and returning from work and loading and unloading when performed by any such employee.

29 U.S.C. § 213(a)(5). FLSA exemptions are to be construed narrowly. *McCune v. Or. Senior Servs. Div.,* 894 F.2d 1107, 1109 (9th Cir.1990) (citing *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945)).

■ Ocean Peace argues that the fish processing that occurred on its trawlers was "first processing" within the meaning of § 213(a)(5). Do and Pham argue to the contrary. It is undisputed that both Do and Pham were fish processors. Pham actually worked as a fish processor. Although Do did not work as a fish processor, her housekeeping duties on the

trawler fell within the exemption. The FLSA regulations provide that

> generally, an employee performing functions without which the ... operations [named in Sections 213(a)(5) and 213(b)(4)] could not go on is, as a practical matter, "employed in" such operations. It is also possible for an employee to come within the exemption provided by section 13(a)(5) or section 13(b)(4) even though he does not directly participate in the physical acts which are performed on the enumerated marine products in carrying on the operations which are named in that section of the Act.

29 C.F.R. § 784.106 (citations omitted); *see also* 29 C.F.R. § 784.105(b); *Wirtz v. Carstedt,* 362 F.2d 67, 70 (9th Cir.1966) ("It is reasonable to assume that Congress intended to extend the exemption to work customarily or frequently associated with the exempt activity."). Do concedes that the work she performed satisfied § 784.106. Therefore, the only question presented is what "first processing" means.

The "first" in "first processing" can be traced to the 1961 amendments to the FLSA. Pub.L. 87–30 § 9. Before 1961, § 213(a)(5) simply referred to "processing." 29 U.S.C. § 213(a)(5) (1958);[2] *see also McComb v. Consol. Fisheries Co.,* 174 F.2d 74, 77 (3d Cir.1949). In *McComb,* which appears to be the earliest case to address the "processing" exemption, the Third Circuit interpreted a prior but substantially similar incarnation of § 213(a)(5) in the context of shoreside operations.

---

**2.** Section 213(a)(5) read as follows:

[A]ny employee employed in the catching, taking, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life, including the going to and returning from work and in-

cluding employment in the loading, unloading, or packing of such products for shipment or in propagating, processing (other than canning), marketing, freezing, curing, storing, or distributing the above products or byproducts thereof.

29 U.S.C. § 213(a)(5) (1958).

The court noted that Congress intended the list of activities in subsection (a) to be "a complete catalog of the activities involved in the fishery industry." *Id.* at 77. Although the earlier statute referred to "processing" rather than "first processing," curiously the court itself referred to "first processing" and concluded that shoreside employees fell within the exemption. The court expressly declined to decide whether the exemption applied to work performed after "first processing." *Id.* at 78.

■ Do and Pham argue that the word "first" in § 213(a)(5) implies that, in order for the exemption to apply, there must be some sort of "second" or final processing beyond the immediate measures required to preserve the fish. That is to say, the word "first" has no meaning unless there is subsequent processing. There is no judicial or regulatory authority supporting Do and Pham's interpretation of "first processing."[3] On its face, the statute does not require such a narrow reading of "first processing." The statute makes no reference to secondary or subsequent processing and, as a matter of common sense, "first processing" encompasses the initial processing at sea.

■ Because § 213(a)(5) is ambiguous, we look to the Department of Labor's FLSA regulations and conclude that they squarely answer the question presented by this appeal. *See Baldwin v. Trailer Inns, Inc.,* 266 F.3d 1104, 1112 n. 4 (9th Cir. 2001) ("We give deference to the DOL's regulations interpreting the FLSA.") (citing *Auer v. Robbins,* 519 U.S. 452, 457, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)). To qualify for a § 213(a)(5) "first processing" exemption, the FLSA regulations require that

(a) the work of the employees is such that they are, within the meaning of the Act, employed in one or more of the named operations of first processing, canning or packing, (b) such operations are performed as an incident to, or in conjunction with, fishing operations of the vessel, (c) such operations are performed at sea, and (d) such operations are performed on the marine product specified in the statute.

29 C.F.R. § 784.128. Those regulations read the text of the statute in a permissible way. Do and Pham argue that because floating factories like the Ocean Peace and Seafreeze trawlers did not exist at the time Congress amended § 213(a)(5) in 1961, or when the Department of Labor promulgated the regulations in 1970, 35 Fed.Reg. 13342 (1970), the first processing exemption should not apply. There is no evidence in the record, however, indicating when factory trawlers made their first appearance on Alaskan waters, or any waters, for that matter. Even assuming that factory trawlers did not appear until after 1970, both the statute and the regulations are framed in terms of specific fishing operations, not specific types of vessels. In this case, each of the elements specified in the regulations has been satisfied.

The regulations define "first processing" as the "first operation or series of continu-

---

3. There is no Ninth Circuit case law interpreting the phrase "first processing" in § 213(a)(5). Our decision in *Worthington v. Icicle Seafoods, Inc.,* 796 F.2d 337 (9th Cir. 1986), was among the few to refer to the provision. That case, however, concerned maintenance employees who worked on a seafood processing barge that was not engaged in catching fish. *See Icicle Seafoods,* *Inc. v. Worthington,* 475 U.S. 709, 710, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986) (reversing court of appeals because of incorrect standard of review). Thus, their work was not performed "in conjunction with ... fishing operations" because it was not incident to fishing operations by the vessel. *Worthington,* 796 F.2d at 338. The court did not reach the scope of the "first processing" language. *Id.*

ous operations" that effectuate change· from a marine product's natural state. 29 C.F.R. § 784.133.[4] In illustrating typical first processing operations, § 784.133 describes operations that are virtually identical to those performed on the Ocean Peace and Seafreeze: cleaning, washing, and grading in preparation for first processing, and then gutting and freezing. *Id.* The regulations specify that § 213(a)(5) is designed to exempt employment in those fishing activities "that are ... materially affected by natural factors or elements, such as the vicissitudes of the weather, the changeable conditions of the water, the run of the catch, and the perishability of the products obtained." 29 C.F.R. § 784.118. As suggested by § 784.133, the regulations account for various workers who are not engaged in fishing, but who are nonetheless important to an integrated fishing expedition. *See, e.g.,* 29 C.F.R. § 784.122 (maintenance workers); 29 C.F.R. § 784.127 (office and clerical workers). Legislative history evinces Congress' intent that FLSA apply uniformly to all employees on a fishing vessel. S.Rep. No. 87–145 (1961), *reprinted in* 1961 U.S.C.C.A.N. 1620, 1653; *see also* 29 C.F.R. § 784.131.

Indeed, Do and Pham never argue that the FLSA regulations are an unreasonable construction of § 213(a)(5). *See Martin v. Refrigeration Sch., Inc.,* 968 F.2d 3, 5 (9th Cir.1992) (citing *Chevron USA v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Do and Pham offered no evidence that the processing that occurred on the Ocean Peace and Seafreeze in any way deviated from what the regulations define as "first processing." Indeed, the term "first processing," coupled with the explanatory regulations, describes precisely what occurred aboard Ocean Pacific's trawlers.

## II. SIX-MONTH LIMITATIONS PERIOD

▪ . The court dismissed Do's and Pham's remaining wage claims on the basis of the six-month limitations period for in rem actions contained in 46 U.S.C. § 10602 and the six-month limitations period specified in the contracts. Do and Pham argue that the limitations periods do not apply because the contracts are void as a matter of law.

Ocean Pacific entered into written contracts with Pham and Do pursuant to 46

---

4. The complete text of 29 C.F.R. 784.133 reads as follows:

Processing connotes a change from the natural state of the marine product and first processing would constitute the first operation or series of continuous operations that effectuate this change. It appears that the first processing operations ordinarily performed on the fishing vessels at sea consist for the most part of eviscerating, removal of the gills, beheading certain fish that have large heads, and the removal of the scallop from its shell. Icing or freezing operations, which ordinarily immediately follow these operations, would also constitute an integral part of the first processing operations, as would such activities as filleting, cutting, scaling, or salting when performed as part of a continuous series of operations. Employment aboard the fishing vessel in freezing operations thus performed is within the exemption if the first processing of which it is a part otherwise meets the conditions of section 13(a)(5), notwithstanding the transfer by the 1961 amendments of "freezing", as such, from this exemption to the exemption from overtime only provided by section 13(b)(4). Such preliminary operations as cleaning, washing, and grading of the marine products, though not exempt as first processing since they effect no change, would be exempt as part of first processing when done in preparation for the first processing operation described above including freezing. The same would be true with respect to the removal of the waste products resulting from the above described operations on board the fishing vessel.

U.S.C. § 10601.[5] Section 10602 creates in rem liability for seamen's wages when fish are caught pursuant to an agreement under § 10601. Do and Pham contend that because the contracts they signed do not bear the signatures of the trawlers' masters and owners, the contracts do not satisfy § 10601 and are, therefore, void. *See Seattle–First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1198 (9th Cir.1996) (holding that a void contract cannot trigger § 10602's statute of limitations).

Do's and Pham's contracts are beset by several potential infirmities, including the absence of an owner's signature on either contract and the misidentification of the vessel on which Pham worked. We, however, need not reach those issues in light of our decision in *Harper v. United States Seafoods*, No. 01–35264, 278 F.3d 971 (9th Cir.2002). In *Harper*, we held that contracts very similar to those at issue here were invalid because they lacked a master's signature as required by § 10601(a). In this case, there is no evidence indicating that the masters of the Ocean Peace or Seafreeze signed or otherwise participated in making the contracts Do and Pham signed. For that reason, the six-month limitations periods prescribed by the contracts and § 10602 do not apply.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with *Harper v. United States Seafoods*. Each party is responsible for its own costs on appeal.

---

**5.** 46 U.S.C. § 10601 reads as follows:
(a) Before proceeding on a voyage, the master or individual in charge of a fishing vessel, fish processing vessel, or fish tender vessel shall make an [sic] fishing agreement in writing with each seaman enployed [sic] on board if the vessel is—
(1) at least 20 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title; and
(2) on a voyage from a port in the United States.

(b) The agreement shall be signed also by the owner of the vessel.
(c) The agreement shall—
(1) state the period of effectiveness of the agreement;
(2) include the terms of any wage, share, or other compensation arrangement peculiar to the fishery in which the vessel will be engaged during the period of the agreement; and
(3) include other agreed terms.

