# United States Court of Appeals
## For the First Circuit

Nos. 07-1396, 07-1506

TIMOTHY DOYLE; GREG HAGAMAN; BRIAN LAGUE;
ANTHONY W. RICHARDS; ERIC EDWARDS,

Plaintiffs, Appellants/Cross-Appellees,

v.

HUNTRESS, INC.; RELENTLESS, INC.,

Defendants, Appellees/Cross-Appellants,

GREG BRAY and KYLE GOODWIN,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, Senior U.S. District Judge]

Before

Lynch, Circuit Judge,
Gibson,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Merlyn P. O'Keefe for appellants/cross-appellees.
Martin K. DeMagistris with whom J. Renn Olenn and Olenn &
Penza, LLP were on brief for appellees/cross-appellants.

January 25, 2008

---

[*]    Of the Eighth Circuit, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>. This decision addresses the doctrine of laches in claims for wages by seamen under 46 U.S.C. § 11107, where the claims are meant both to compensate and to encourage compliance with the requirement in 46 U.S.C. § 10601 that the seamen be given pre-trip written agreements.

From 1993 to 2000, the plaintiffs, Timothy Doyle, Greg Hagaman, Brian Lague, Anthony W. Richards, and Eric Edwards, worked as fishermen on a number of trips aboard the vessels <u>Persistence</u> and <u>Relentless</u>, owned by defendants Huntress, Inc., and Relentless, Inc., respectively. The vessels are the only fishing boats operating out of the port at Davisville, Rhode Island. In 2001, the seamen brought suit against the vessel owners in federal district court, alleging that because the defendants had never put in writing their compensation arrangements with the fishermen, the defendants violated 46 U.S.C. § 10601. That statute requires owners of certain fishing vessels to enter into written fishing agreements with each seaman employed aboard the vessel prior to the voyage. The seamen claimed relief under 46 U.S.C. § 11107, which allows seamen to recover wages for employment under conditions contrary to federal law.

The district court granted partial summary judgment to the plaintiffs, finding that the defendants had violated § 10601 and concluding that the plaintiffs had a cause of action under § 11107. <u>Doyle</u> v. <u>Huntress, Inc. (Doyle I)</u>, 301 F. Supp. 2d 135,

145, 148 (D.R.I. 2004). The district court also found, however, that trial was necessary to resolve genuine issues of material fact as to the defendants' defenses of laches and waiver. Id. at 149, 151.

Before trial, the defendants filed an interlocutory appeal with this court challenging the district court's grant of partial summary judgment to the plaintiffs. We affirmed the district court in Doyle v. Huntress, Inc. (Doyle II), 419 F.3d 3, 15 (1st Cir. 2005). The district court then held a bench trial to resolve the issues of laches and waiver. Doyle v. Huntress, Inc. (Doyle III), 474 F. Supp. 2d 337 (D.R.I. 2007). It awarded three of the seamen $1,274.28, $1,353.38, and $2,381.74, plus pre-judgment interest; two received nothing. Id. at 347. Additional facts are to be found in the three earlier published decisions.

I.

In Doyle II, we held that a cause of action is created for seamen under 46 U.S.C. § 11107. 419 F.3d at 15. That statute provides that a seaman engaged "contrary to a law of the United States . . . may leave the service of the vessel at any time" and is entitled to receive the higher of two amounts: (1) "the highest rate of wages at the port from which the seaman was engaged" or (2) "the amount agreed to be given the seaman at the time of engagement." 46 U.S.C. § 11107.

The entitlement to this statutory remedy under § 11107 is dependent on a showing that the employment was "contrary to a law of the United States." It is now undisputed that the seamen plaintiffs were engaged to work on voyages from 1993 to 2000 through lay share contracts which did not comply with the requirements of 46 U.S.C. § 10601. That statute requires written fishing agreements signed by each seaman prior to the voyage that "specify the terms of each seaman's compensation arrangement, including the amount of the seaman's anticipated 'share' in the proceeds of the catch." Doyle I, 301 F. Supp. 2d at 144.[1] The defendants used various types of fishing agreements with

---

[1] The version of 46 U.S.C. § 10601 effective at the time of the filing of the complaint required, in pertinent part, that:

> (a) Before proceeding on a voyage, the master or individual in charge of a fishing vessel. . . shall make a fishing agreement in writing with each seaman enployed [sic] on board . . . .
> (b) The agreement shall also be signed by the owner of the vessel.
> (c) The agreement shall-
>     (1) state the period of effectiveness of the agreement;
>     (2) include the terms of any wage, share, or other compensation arrangement peculiar to the fishery in which the vessel will be engaged during the period of the agreement; and
>     (3) include other agreed terms.

46 U.S.C. § 10601 (1988). Section 10601 was amended in 2002 to remove subsection (b). Pub. L. No. 107-295, § 441(a) & (b)(1)-(3), 116 Stat. 2064, 2131 (2002). See Doyle I, 301 F. Supp. 2d at 142 n.5.

plaintiffs: oral agreements, form agreements that described the lay share compensation scheme but not the exact share, form agreements that left the share terms blank, and crew roster sign-in sheets with disclaimer language. Id. The district court found none of these agreements satisfy the requirements of § 10601. Id.

To be clear, the seamen were all paid for their services. They were paid according to the "lay share system," under which each fisherman received some share of the net profits of each voyage, with the exact share determined by the captain based on the fisherman's skill, experience, and performance on the voyage.[2] This court noted that "in this instance, where the fishermen have already received a lay share portion of the proceeds from the fishing voyages . . . , there does not appear to be any other real remedy for the vessel owners' failure to comply with § 10601, absent § 11107." Doyle II, 419 F.3d at 14.

The case then returned to the district court for the determination of an appropriate remedy for the violation. The vessel owners had asserted a laches defense, which the court found meritorious as to all claims for wages before August 31, 1998, three years before the filing of the complaint. Doyle III, 474 F. Supp. 2d at 345. As a result, only three of the five plaintiffs received any damages. Id. at 347.

---

[2] A fuller account of the mechanics of the lay share system is set out in our earlier opinion. Doyle II, 419 F.3d at 6.

Each side has appealed.

## II.

A.      Laches in Admiralty Cases

This case, concerning seamen's wages, was brought within the admiralty jurisdiction of the federal courts, 46 U.S.C. § 1333. Doyle II, 419 F.3d at 7. The statutes on which relief is sought, 46 U.S.C. § 11107 and § 10601, do not contain a statute of limitations.

"In an admiralty case, maritime law and the equitable doctrine of laches govern the time to sue." TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000). The use of laches is governed by an initial determination, on which the court relies to establish both burdens of proof and presumptions of untimeliness. Id. The initial determination requires the district court to choose the most analogous statutory limitation period. This may be located either in federal law or in state law. Id. at 176.

Once the most analogous statutory limitation period is determined, claims filed outside that period are subject to a presumption of laches and the plaintiff bears the burden of showing these claims are not barred. Id. at 176. As to claims filed within the analogous statutory limitation period, the burden of showing laches falls on the defendant. Id. at 175.

The substantive content of the laches doctrine requires focus on whether the plaintiff's delay in bringing suit was unreasonable and whether that delay caused prejudice to defendant. Id. at 175. In the end, laches is an equitable doctrine, "within the 'sound discretion' of the district court." Puerto Rican-American Ins. Co. v. Benjamin Shipping Co., 829 F.2d 281, 283 (1st Cir. 1987) (quoting Azalea Fleet v. Dreyfus Supply & Mach. Corp., 782 F.2d 1455, 1458 (8th Cir. 1986)).

The district court correctly recited this framework of analysis. Doyle III, 474 F. Supp. 2d at 345. Here, the "delay" in filing the complaint was from 1993 to 2001, an eight-year period.

B.      Choice of Analogous Limitation Period

The initial determination of the most analogous statute of limitations is an issue of law, which we review de novo. See Telink, Inc. v. United States, 24 F.3d 42, 46 (9th Cir. 1994); Union Carbide Corp. v. State Bd. of Tax Comm'rs, 992 F.2d 119, 121 (7th Cir. 1993). Each side has appealed from the district court's choice of the three-year limitation period for unpaid wage claims in Rhode Island law. R.I. Gen. Laws § 28-14-20. The seamen argue that they should get the benefit of the general ten-year limitation period for civil actions in Rhode Island General Laws section 9-1-13(a).

The vessel owners argue that state law is the wrong source and that federal law is more appropriate, because the use of

federal law serves the interests of national uniformity. The federal law which is most analogous, they argue, is the two-year statute of limitations in the Fair Labor Standards Act ("FLSA"). See 29 U.S.C. § 255(a).

We think the district court got it exactly right.

The more serious of the two arguments is that federal law should apply, in the form of the two-year FLSA statute of limitations. Some district courts have applied this federal limitation period to similar claims. See, e.g., Brown v. Royal Caribbean Cruises, Ltd., 2000 WL 34449703, at *3 (S.D.N.Y. Aug. 24, 2000). While using a uniform federal standard has some attraction, we think the FLSA cannot be used as most analogous to claims under § 11107, and no other federal statute has been suggested.

First, the FLSA expressly excludes from its coverage claims of maritime fishermen. 29 U.S.C. § 213(a)(5) (excluding from wage and hour requirements "any employee employed in the catching [or] taking . . . of any kind of fish, shellfish, . . . or other aquatic forms of animal and vegetable life"); see also Do v. Ocean Peace Inc., 279 F.3d 688, 691-93 (9th Cir. 2002). There is no reason to think Congress wanted this exclusion to apply to everything except FLSA's limitation period. When Congress recodified § 11107 in 1983, see Doyle II, 419 F.3d at 8, it could easily have chosen to include a limitation period or to refer to another federal statute, but did not.

-8-

Further, the general admiralty rule of applying laches to untimely claims, against which Congress legislated, frequently chose state law as an analogous limitation period. See, e.g., Larios v. Victory Carriers, Inc., 316 F.2d 63, 66 (2d Cir. 1963) (Friendly, J.) (recognizing the relevance of "the analogous state statute of limitations" in laches analysis); see also, e.g., Sandvik v. Ala. Packers Ass'n, 609 F.2d 969, 971 (9th Cir. 1979) ("In applying the doctrine of laches, weight is generally given to the statute of limitations that would apply to a comparable non-admiralty action filed in state court in the state in which the cause of action arose."); Uisdean R. Vass & Xia Chen, The Admiralty Doctrine of Laches, 53 La. L. Rev. 495, 518 (1992) (recognizing the state law statute of limitations as a "good rule of thumb" to determine the analogous prescriptive period).

Where a state law provides a longer period than the two years under the FLSA, using the state law is also in greater accord with the presumption of liberal treatment afforded to seamen. The Supreme Court has emphasized that "congressional legislation in aid of seamen . . . is largely remedial and calls for liberal interpretation in favor of the seamen. . . . '[T]he maritime law by inveterate tradition has made the ordinary seaman a member of a favored class.'" Isbrandtsen Co. v. Johnson, 343 U.S. 779, 782 (1952) (quoting Warner v. Goltra, 293 U.S. 155, 162 (1934)); see also Doyle II, 419 F.3d at 9 ("Another significant factor that we

must consider in our construction of this statute is the presumption in favor of seamen."). As a practical matter, seamen are out at sea, sometimes for months at a time, without direct access to courts, and here the longer state three-year limitation period fits better with this reality. Finally, given admiralty law's traditional hospitality towards seamen, it would be dissonant to give seamen less protection for the timeliness of their wage claims compared to the wage claims of their non-nautical neighbors in Rhode Island.

The seamen, in turn, argue that this legal doctrine of hospitality towards them dictates that the longer state contract limitation period of ten years must apply. The operative principle, though, is that the most analogous statute of limitations, not the most generous one, should set the benchmark. The wage statute, R.I. Gen. Laws § 28-14-20, clearly is a tighter analogy than Rhode Island's catchall statute of limitations for civil actions. On the plain language of the statute, section 28-14-20 specifically provides for the recovery of unpaid wages: "a person who is required to be paid wages for his or her labor" may recover wages from his or her employer "within three (3) years from time of services rendered by an employee." R.I. Gen. Laws § 28-14-20(a), (b). The lay shares by which the seamen were paid meet the statute's definition of "wages": "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or

ascertained on a time, task, piece, commission basis, or other method of calculating the amount." R.I. Gen. Laws § 28-14-1(4). Section 28-14-20 is clearly the comparable non-admiralty action: were the seamen able to bring their claim under Rhode Island state law, their action would be based on this statute.

The seamen characterize the state unpaid wage statute as dissimilar because an enforcement action under the unpaid wage statute would be brought by the director of the Rhode Island Department of Labor, not by the individual employees, imposing less of a burden on the plaintiffs. That argument best goes to whether any delay by the plaintiffs was unreasonable, not to whether the limitation period is analogous.

C.      Application of Laches

Unlike the de novo initial determination of an analogous limitation period, we review the court's application of the laches doctrine for abuse of discretion. Ansin v. River Oaks Furniture, Inc., 105 F.3d 745, 757 (1st Cir. 1997); see also Puerto Rican-American Ins. Co., 829 F.2d at 283. Of course, use of an inapplicable legal standard is an abuse of discretion. Picciotto v. Cont'l Cas. Co., ___ F.3d ___, 2008 WL 62451, at *3 (1st Cir. Jan. 7, 2008) (citing Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir. 2003), and Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 37 (1st Cir. 2003)). We break the analysis of the court's treatment of laches into two parts: (a) the order barring

all pre-August 31, 1998 claims for wages and (b) the ruling allowing wages for the claims within the analogous three-year statutory period.

### 1.     Pre-August 31, 1998 Claims

The district court held that with respect to the pre-August 31, 1998 claims, the plaintiffs had not met their burden to displace the presumption of laches. The court found that it was "unreasonable for the crewmen to pursue wage claims from the distant past and, similarly, it is prejudicial to Defendants to be required to pay over money to Plaintiffs that has already been distributed to the other crewmen." Doyle III, 474 F. Supp. 2d at 345.

The seamen attack the ruling, arguing that the vessel owners had acted in bad faith, and therefore cannot invoke laches at all. The plaintiffs must show the court clearly erred. Plaintiffs also argue that even in the absence of bad faith, § 10601 is a strict liability statute. They argue that once the district court had found that the plaintiffs "did not know of their rights under § 10601 . . . and that they filed suit promptly to redress their rights after they learned of the existence of the federal statute," id. at 343, the court clearly erred in finding the delay unreasonable. The plaintiffs further argue that the court committed legal error in not requiring a connection between delay and prejudice to the defendants. Even if there was a delay,

-12-

plaintiffs contend, any prejudice suffered by the defendants was not a result of that delay as the amount owed the plaintiffs under § 11107 was the same immediately after the violation as it was when the plaintiffs filed suit.

We cut to the chase, bypassing most of plaintiffs' arguments. In the end, the district court reasoned that it was inequitable to require the vessel owners, who had paid out all the wages owed to all the crew members on the trips from 1993 to 1998, to come up with additional monies to pay these plaintiffs additional sums to equalize them with the top rates paid to others. This is especially so since the others had been determined to be more valuable to the success of the fishing enterprise. The violation of § 10601 was not that the seamen were not paid, but that they were not given fixed written employment contracts before each trip.

While other courts may have reached a different result, this conclusion was within the court's considerable range of discretion. The seamen argue that the defendants could retroactively take a lesser share of the profits of the vessel on each of the trips, or just pay the plaintiffs. The argument does not refute the district court's conclusion that there would be additional costs to the defendants.

To the extent that the remedy of § 11107 could be viewed as a type of incentive to secure compliance with § 10601, the

-13-

district court found that the vessel owners had not acted in bad faith and had not secured any financial windfall from their non-compliance.

The seamen argue that this is not about the fairness of the penalty or incentives to get defendants to comply with § 10601. They say the point is that they have been deprived of compensation that they deserved. They say that had their shares been disclosed to them before the fishing trips instead of shares being awarded after the trips based on their performance, they might not have gone on the trips, or at least would have been in a better bargaining position, which certainly would have produced higher shares. This is sheer speculation, which the court was not required to credit. We note that the district court found that neither side's witnesses were very credible.

There was no abuse of discretion in applying laches to the plaintiffs' older claims.

2. Damages Awarded for Post-August 31, 1998 Claims

Not content with their victory in defeating the vast majority of the seamen's claims, the vessel owners argue the small sums actually awarded must be reduced further. The vessel owners argue the district court erred by simply taking the highest amount paid to any crewman on a given trip and subtracting the amount paid to each plaintiff to compute damages for that plaintiff; instead, the court should have redivided the net profits of a given trip to

give everyone an equal share and used that smaller amount as the amount each plaintiff should have received. The difference between the plaintiffs' and the defendants' proposed method of calculation, however, amounts to significantly less than two thousand dollars.

Section 11107 allows a seaman to recover "the highest rate of wages at the port from which the seaman was engaged." 46 U.S.C. § 11107. The district court interpreted this to mean "whatever amounts to a full share for each trip [the seaman] went on within the three year period." Doyle III, 474 F. Supp. 2d at 346. It is unclear whether "highest rate of wages" in § 11107 is a term of art, as the Ninth Circuit's well-reasoned opinion in TCW Special Credits v. Chloe Z Fishing Co., 129 F.3d 1330, 1333 (9th Cir. 1997) suggests,[3] or whether it has a literal meaning, as the district court found.

We need not decide whether the district court's approach or the Ninth Circuit's approach is correct. What is clear is that the approach offered by the defendants to the court was not correct, and need not have been used. We also note that this case involves equitable principles, and the district court had already reduced the potential award by applying laches to five of the eight

---

[3] The Ninth Circuit construed "highest rate of wages" to mean the amount "that could be earned by a seaman at the port of hire who has the same rating as the complainant." TCW Special Credits, 129 F.3d at 1333. "Ratings" are a way of classifying seamen based on their duties, skills, and performance. See id. at 1333-34.

years that the seamen worked.  The district court's award to the plaintiffs was not inequitable because it failed to make the award smaller.

The judgment of the district court is affirmed.