# United States Court of Appeals
## For the First Circuit

No. 08-1625

TAG/ICIB SERVICES, INC., agent of Compañía Chilena
de Navegación Interoceánica (CCNI),

Plaintiff, Appellee,

v.

SEDECO SERVICIO DE DESCUENTO EN COMPRAS;
ALEX MENDA,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Selya, and Leval,[*]
Circuit Judges.

Paul E. Calvesbert, with whom Calvesbert Law Offices PSC, was
on brief for appellants.
Luis R. Rivera-González, for appellee.

June 26, 2009

_____

[*] Of the Second Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. Sedeco Servicio de Descuento en Compras ("Sedeco") appeals a $7,400 judgment entered against it for overdue demurrage owed to TAG/ICIB Services, Inc. ("TAG"). The case was resolved on stipulated facts, and the primary question before us is which statute of limitations is most analogous to TAG's claim for overdue demurrage charges on international shipments to Puerto Rico. After careful consideration, we reverse.

## I.  Background

TAG sued Sedeco and its principal, Alex Menda,[1] on September 13, 2007. At an initial status conference, the parties consented to resolution of the case on the merits under stipulated facts after briefing on the issue of the applicable limitation period. These stipulated facts are, in relevant part, as follows.

TAG brings this collection action as an agent of Compañía Chilena de Navegación Interoceánica ("CCNI"), an ocean carrier engaged in transporting goods by sea. Sedeco purchased goods shipped to Puerto Rico by CCNI. All such shipments originated in foreign ports and were discharged at the port of San Juan. Sedeco incurred $7,475 in demurrage charges in connection with this shipping, as represented by thirteen invoices dated between

---

[1] Appellants complain that Menda was not a party to the contract and that TAG sued him vexatiously. In fact, the parties stipulated that there was no privity of contract between Menda and the carrier. But Menda never moved to dismiss claims against him, and appellants' brief on appeal does not challenge the district court's entry of judgment on this basis. Accordingly, the issue of the propriety of claims against Menda is not before us.

-2-

January 28, 2003, and September 7, 2006.  These demurrage charges represent amounts due as a result of Sedeco's retention of CCNI's containers beyond the time allowed.  Sedeco does not dispute that it incurred the charges represented in the invoices.

Twelve of the thirteen invoices, totaling $7,400, are dated within three years of the date this action was filed.  Four of the invoices are dated within eighteen months of the filing of this action.  None were issued within 180 days of the filing of this action.  TAG sent Sedeco a collection letter on January 23, 2007, and furnished supporting documents on February 6, 2007.

Sedeco argued to the district court that the 180-day limitations period found in Article 947 of Puerto Rico's commercial code was directly controlling, or, in the alternative, supplied the most analogous limitations period.  See P.R. Laws Ann. tit. 10, § 1909.  TAG relied on our decision in TAG/ICIB Servs. v. Pan Am. Grain Co., 215 F.3d 172 (1st Cir. 2000) [hereinafter Pan Am. Grain], to argue that the most analogous statute of limitations was the eighteen month statute of limitation contained in the federal Interstate Commerce Commission Termination Act of 1995 ("ICCTA").  See 49 U.S.C. § 14705.  The district court accepted neither argument and found most analogous a three-year limitations period in the federal Shipping Act of 1984.  See 46 U.S.C. § 41301(a).  Sedeco challenges this conclusion on appeal.

After the appeal was filed but before oral argument, Sedeco filed for bankruptcy. Sedeco sought permission from the bankruptcy court to lift the automatic stay provisions of 11 U.S.C. § 362(a)(1) so as to allow this appeal to go forward. On March 5, 2009, the United States Bankruptcy Court for the District of Puerto Rico entered an order permitting Sedeco's counsel to argue the case and authorizing this court to decide the appeal. In re Servicios de Descuento en Compra Inc, No. 09-00832, docket entry 33 (Bankr. D.P.R. March 5, 2009).

## II. Discussion

### A. The Established Framework

The district court had subject matter jurisdiction over this action to enforce a maritime shipping contract pursuant to 28 U.S.C. § 1333. "[I]n determining whether a contract falls within admiralty, the true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions." Exxon Corp. v. Cent. Gulf Lines, 500 U.S. 603, 610 (1991) (internal quotation marks omitted). In this case it is clear that the maritime shipping contracts TAG asserts trigger the district court's admiralty jurisdiction. See Pan Am. Grain, 215 F.3d at 175 & n.3.

Our previous decision in Pan American Grain, in which TAG sued Pan American Grain over demurrage incurred in connection with

-4-

interstate maritime shipments, sets up the applicable legal framework:

> In an admiralty case, maritime law and the equitable doctrine of laches govern the time to sue. When applying the doctrine of laches, the court examines whether plaintiff's delay in bringing suit was unreasonable and whether defendant was prejudiced by the delay.
>
> In the maritime context, a laches analysis utilizes as a benchmark the limitations period contained in the most analogous statute. That limitations period is not per se dispositive, but rather courts rely upon it to establish burdens of proof and presumptions of timeliness and untimeliness. Hence, if a plaintiff files a complaint within the analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendant. If a plaintiff files after the statutory period has expired, the burden shifts and a presumption of laches is created. The analogous limitation period can be located either in state or federal law.

Id. at 175-76 (citations and internal quotation marks omitted). This much is clear.[2] The disputed question arises in choosing this analogous limitations period.

### B. The Analogous Limitations Period

"The initial determination of the most analogous statute of limitations is an issue of law, which we review de novo." Doyle v. Huntress, Inc., 513 F.3d 331, 335 (1st Cir. 2008).

---

[2] Sedeco does suggest that Article 947 should directly govern this action since it is the controlling law of Puerto Rico. We reject this argument as inconsistent with the established law that requires us to apply the above laches analysis to maritime claims.

TAG relies heavily on our reasoning in Pan American Grain, which held a federal limitations statute most analogous. We summarize this decision. The Pan American Grain court faced an action to collect demurrage on interstate, not international, shipping. That decision noted that our precedent had recognized a private right of action that maritime carriers could use to collect demurrage charges "specified in tariffs set forth in certain commerce-related statutes." Pan Am. Grain, 215 F.3d at 175 n.3 (citing Mar. Serv. Corp. v. Sweet Brokerage de P.R., Inc., 537 F.2d 560, 562-63 (1st Cir. 1976)). But TAG's action against Pan American Grain was brought as an action for breach of a maritime contract, not as a Shipping Act claim, so we did not further analyze a direct statutory action, except to recognize that "the same statutes of limitation found . . . to be most analogous for laches purposes might control directly" in such an action. Id.

Although Pan American Grain used language indicating that it is merely the subject matter of the federal statutes that creates the analogy, see id. at 176 ("Here, we are satisfied that the most analogous statutes are the federal statutes regulating the very tariffs under which the alleged demurrages arose."), the better read is that the private right of action contained in that statute controlled our determination that it was most analogous. See id. This conclusion is also buttressed by our recent analysis of the issue in Doyle. In deciding whether to apply the FLSA or a

-6-

state-law limitations period to an admiralty labor dispute, we determined that largely because the FLSA declined to cover maritime fishermen, it could not be deemed most analogous to such fishermen's claims. See Doyle, 513 F.3d at 336. We also quoted a Ninth Circuit case noting that "'weight is generally given to the statute of limitations that would apply to a comparable non-admiralty action filed in state court in the state in which the cause of action arose.'" Id. (quoting Sandvik v. Ala. Packers Ass'n, 609 F.2d 969, 971 (9th Cir. 1979)).

Pan American Grain argued that Puerto Rico state law, namely Article 947 of the Puerto Rico Commerce Code, should apply. Pan Am. Grain, 215 F.3d at 176. Specifically, Pan American Grain relied on a Puerto Rico Supreme Court case that held that Article 947's 180-day limitations period applied to the collection of demurrage charges incurred in connection with shipments to Puerto Rico from a foreign port. Id. at 177 (citing Mortensen & Lange v. San Juan Mercantile Corp., 119 D.P.R. 345, 19 P.R. Offic. Trans. 372 (1987)). The Pan American Grain court conceded that the Puerto Rico statute was "broad enough to apply" to demurrage, but refused to apply it, stating that "an admiralty court must apply the federal maritime rules that directly address the issues at hand, and only resort to state law when no federal rule applies." Id.[3]

---

[3] Specifically, we found two federal rules applied. Though the Shipping Act of 1916 did not have a built-in statute of limitations, the related Interstate Commerce Act supplied a three-

-7-

This preference for federal law, however, need not derail application of state law if no federal law "directly addresses these issues." In Doyle, the highly related federal law explicitly declined to speak precisely to the relevant question and we determined that Congress's choice justified a refusal to borrow that limitations period. Moreover, while there is some preference for choosing federal law in admiralty cases, there is also a long tradition of borrowing state limitations periods. See Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313-14 (1955) (rejecting the idea "that every term in every maritime contract can only be controlled by some federally defined admiralty rule" and stating that "[i]n the field of maritime contracts as in that of maritime torts, the National Government has left much regulatory power in the States" (footnotes omitted)); see also Uisdean R. Vass & Xia Chen, The Admiralty Doctrine of Laches, 53 La. L. Rev. 495, 518 (1992) (suggesting that resort to the limitations period governing an identical non-admiralty state claim is "a good rule of thumb").

---

year statute of limitations. Id. at 176-77. Further, we held that after the ICCTA replaced the Shipping Act of 1916, the most analogous statute of limitations was the ICCTA provision which directly specified that "[a] carrier providing transportation or service subject to jurisdiction under chapter 135 must begin a civil action to recover charges for transportation or service provided by the carrier within 18 months after the claim accrues." Id. at 177 (citing 49 U.S.C. 14705(a)).

Considering this exposition of our previous decisions, it should be easier to evaluate the candidates for the most analogous statute of limitations in this case involving demurrage on international shipments. After examining why the reasoning of Pan American Grain is not controlling, and after rejecting the possible federal analogues, we conclude that Article 947 is most analogous. We explain.

The first possibility is simply to apply the same limitations period as in the Pan American Grain decision. Though no party asserts this position on appeal, this was the position TAG advanced before the district court. While there is some appeal of simplicity in applying the ICCTA's eighteen month statute of limitations period to all demurrage claims,[4] we conclude that doing so in the case of foreign shipments is not proper. This is because the ICCTA does not apply to shipments originating in a foreign port and terminating in a United States port, unless the shipment transships through one United States port on the way to the final

---

[4] One law review article analyzing Pan American Grain advocates uniformly applying its federal rule in all demurrage cases. See Paul W. Stewart and Christine H. Scheinberg, Time and Demurrage and the Case for Uniformity, 29 Transp. L.J. 235 (2002). This article states that "[u]niformity in the realm of interstate and international commerce is a prime goal of all federal legislation on commerce" and emphasized the need to defer to Congress's will in setting the applicable limitations period. Id. at 245-46. According to this article, "the [Pan American Grain] case settles for all time the appropriate analogous statute to be used as a benchmark for laches analysis in demurrage claims not brought directly under the ICCTA." Id. As explained below, we do not agree with this conclusion in this case.

United States Port. 49 U.S.C. § 13521(a)(3)(C). Thus, in the ICCTA, Congress has not spoken to the applicable limitations period for foreign shipments that arrive directly in the United States.

Further, since the ICCTA does not apply in this case, whatever analogous private rights of action we acknowledged under it and its predecessor statutes would not be available. As explained above, Pan American Grain's decision to reject the state limitations period in favor of the federal period was based, in part, on the idea that the similar private right of action under federal law naturally provided an analogous statute of limitations. See 215 F.3d at 176. Thus, in the present case, the ICCTA does not govern the action, and the reasons for concluding its limitations period are most analogous have diminished force.[5]

So, we turn to the second federal candidate, the Shipping Act of 1984. The district court concluded that TAG's current suit was brought under this act, which regulates international shipping, and so used it to find the analogous limitations period. In reaching this conclusion, the district court relied on its decision

---

[5] This conclusion is supported by another scholarly commentator. William P. Byrne, Competing Periods in Determining Laches in Demurrage Disputes, 33 Transp. L.J. 135, 138-39 (2006). This article criticizes Stewart and Scheinberg's analysis and concludes that "[Pan American Grain] should not be read to embrace ocean transportation not included within the definition of the non-contiguous domestic trade." Id. at 138. Thus, Byrne concludes that "[t]here is no reason . . . to extend [Pan American Grain]'s applicability by analogy to foreign ocean transportation, a subject that Congress has elected to distinguish and treat independently from domestic water transportation." Id. at 139.

in an earlier case, which found that act applicable to foreign shipments involving only one United States port. See SL Serv., Inc. v. Int'l Food Packers, Inc., 217 F. Supp. 2d 180, 185 (D.P.R. 2002). That case concluded that the Shipping Act of 1984 "appears" to regulate the tariffs at issue since its purpose was "'to establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs.'" Id. (quoting 46 U.S.C. § 40101). The district court then applied a three-year limitations period on actions filed with the FMC that assert a violation of the Shipping Act of 1984. See 46 U.S.C. § 41301(a).

We agree that the Shipping Act of 1984 applies to the shipping at issue in this case,[6] but we disagree that the statute of limitations used by the district court is analogous. This statute of limitations is related to a provision of the Shipping Act of 1984 that bars shippers from obtaining transportation below

---

[6] As noted above, The ICCTA applies to shipments that transship through a second United States port. Our conclusion that the ICCTA does not apply here is based on the assumption that there was no transshipment in this case. It is true that the stipulated facts simply state that the shipments at issue "originated in foreign ports, and were discharged at the port of San Juan," and thus do not foreclose the possibility of transshipment. But all parties proceeded both below and on appeal as though there was no transshipment. No party argues on appeal that the ICCTA is directly controlling because of a transshipment. Thus, any argument that a relevant transshipment occurred is waived, both by failure to develop in the district court and by failure to present it to us on appeal.

-11-

applicable rates through an "unjust or unfair device." Id.
§ 41102(a). A violation of this, or other provision of the
Shipping Act of 1984, is enforced through an administrative
complaint with the FMC. Id. § 41301(a). Such administrative
complaints must be brought within three years, id., and it is this
period that the district court found most analogous to the present
case.

But that section is not on point here. First, the right
of action created in 46 U.S.C. § 41301 does not extend to simple
cases of failure to pay. Rather, the statute requires an "unjust
or unfair device or means," and regulations make clear that the FMC
will not infer such a device "from the failure of a shipper to pay
ocean freight." 46 C.F.R. § 545.2. Second, the provision is
incongruous with this case since, unlike the private right of
action available for interstate shipments, it requires that a
plaintiff seek relief before an administrative body. Thus, there
is not the same need, as encountered in Pan American Grain, to
ensure that the federal court hearing a maritime contract applies
the same law as would be applied if the carrier had sought to
collect through a direct action under the statutes. In sum, the
Shipping Act of 1984 does not provide a right of action resembling
the one found in the ICCTA. Thus, we conclude that the Shipping
Act of 1984's three-year limitations period on administrative
actions does not regulate actions for the collection of demurrage,

and so is not perfectly analogous to TAG's claim.  Nor is another provision of the Shipping Act of 1984 on point.[7]

Thus, we are left with two flawed analogies.  Though the ICCTA contains a limitations period contemplating a collection claim, it explicitly does not apply to foreign shipments that do not include a domestic transshipment.  Though the Shipping Act of 1984 regulates the kind of shipments at issue, it does not provide a right of action comparable to that provided by the ICCTA and does not regulate simple collection claims like the one presently before us.

Confronted with these imperfect analogies, we return to Puerto Rico's Article 947.  It is precisely on point:  "The actions relating to the collection of transportation, freights, expenses inherent thereto, and the contributions of ordinary averages shall prescribe six months after the goods which gave rise thereto were

---

[7] As discussed below, Sedeco's primary claim is that Puerto Rico law should supply the applicable limitations period.  In the alternative, Sedeco argues that we should apply the Shipping Act of 1984's 180-day limitations period on applications with the FMC for refunds of freight overcharges.  See 46 U.S.C. § 40503.  But the present action is one to collect an unpaid charge, not for a refund of an overcharge.  Thus, just as with the three-year limitations period used by the district court, there are serious problems with this analogy.

We have reviewed the entire Shipping Act of 1984 and found no other provision which might regulate TAG's instant claim.  Nor has TAG suggested that another provision of that act applies, even after we gave TAG an explicit opportunity to do so after oral argument.  In fact, TAG did not even suggest that its claim was brought under the Shipping Act of 1984 in its complaint or briefing to the district court.

delivered." P.R. Laws Ann. tit. 10, § 1909. The Puerto Rico Supreme Court, the authoritative source for interpretation of Puerto Rico law, has recognized that this statute applies to demurrage on international shipments. Mortensen, 119 D.P.R. at 359, 19 P.R. Offic. Trans. at 387. And we have already acknowledged the statute's breadth. Pan Am. Grain, 215 F.3d at 177 (stating "that statute is certainly broad enough to apply to a demurrage action").

Thus, the relevant federal laws here do not apply to a simple collection action for demurrage on a foreign shipment to a single United States port. Just as in Doyle, in the absence of federal law on point, it makes most sense to apply a controlling state law. So, in the case of international shipments arriving directly to Puerto Rico, the limitations period in Article 947 is most analogous.

We note that this conclusion is narrow, in that it only applies to shipments sent directly to a single United States port. If a second United States port becomes involved through transshipment, thus increasing the risk of interstate conflict of laws, then the ICCTA supplies a federal rule.

**C. Application of Laches**

With the applicable statute of limitations period resolved, the final question is whether TAG can meet its burden of rebutting the presumption of unreasonable delay and prejudice.

The district court did not analyze the question of prejudice and delay, but simply entered judgment for TAG on the $7,400 worth of claims within the three-year period and excluded the $75 it found to be outside the presumptive laches period. No party challenges these particular rulings on appeal. Aside from the mailing of a collection letter, no facts in the stipulation are relevant to this question. The collection letter was filed more than six months after all but one of the invoices, and TAG makes no argument on appeal as to why sending such a letter rebuts the presumption against them.[8]

The record shows that the parties stipulated to facts and consented to the district court entering judgment on those facts. When this happens in a non-jury case, we treat the matter as a case stated. García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 644 (1st Cir. 2000). In such a case, "[i]nstead of expending time and money on a trial, the parties may decide that the pre-trial record establishes all the necessary grounds upon which a judge may

---

[8] Somewhat confusingly, TAG has argued on appeal, in the alternative, that even if the district court applied the wrong limitations period, the limitations period is not dispositive, and, since Sedeco did not pursue the issue, it submitted to the district court's resolution of that issue as a matter of law. Thus, if anything, TAG is arguing that the presumption question should be resolved as a matter of law. Certainly TAG has not sought a remand on that issue should the 180-day period apply.

Finally, we also note that TAG has not argued on appeal that any sort of tolling should be possible in this maritime laches analysis by virtue of the extra-judicial claim letter sent to Sedeco in January 2007.

-15-

enter a final ruling on one or all of the issues in dispute." Id. Thus, we conclude that no error arose from the district court's failure to apply the laches presumption, since the parties offered scant facts relevant to such an inquiry, and since the parties consented to judgment on the stipulation.

Considering this procedural posture, the proper course is clear. The 180-day presumption based on Article 947 applies to all of TAG's claims. TAG offers no grounds for rebutting that presumption. And the parties consented to entry of judgment based on the stipulation. Thus, we conclude that the district court should have entered judgment for the defendants.

### III. **Conclusion**

For the foregoing reasons, the judgment below is reversed and the case remanded for the district court to enter judgment for the defendants.

**Reversed and Remanded**.